## LANG v PENNSYVANIA RAILROAD CO

Ohio Appeals, 3rd Dist, Allen Co

No 732. Decided March 30, 1938

Clarence P. Smith; Christopher & Dorn; Lippincott & Lippincott, Lima, for appellant.

Wheeler, Bentley, Neville & Cory, Lima, for appellee.

## OPINION

By Guernsey, PJ.

This is an appeal on questions of law. The action was instituted by Elsie Lang, Administratrix of the estate of Philip Lang, deceased, plaintiff-appellant, to recover from the defendant-appellee, Pennsylvania Railroad Company, damages for the wrongful death of Philip Lang who was the driver of an automobile truck and trailer, when the same collided with a passenger train of the Pennsylvania Railroad Company at the Main Street grade crossing of said railroad company in the City of Delphos, Allen county, Ohio, on February 26, 1934, at about the hour of 4:53 A. M.

The case came on for trial in the Common Pleas Court of Allen county, Ohio, and at the close of all evidence in the case a verdict was directed for the defendant railroad company. Thereafter judgment was duly entered on said verdict and this is the

judgment from which this appeal is taken by the plaintiff.

The facts developed by the evidence of the plaintiff are that Main Street in the City of Delphos, Ohio, extends in a general northerly and southerly direction; that the tracks of the Pennsylvania Railroad Company extend in general easterly and westerly direction intersecting Main Street at right angles; that approaching the tracks from the north on Main Street the traveler on the highway comes first to the westbound main track, then proceeding southwardly crosses the eastbound main track and a switching track; that the Main Street grade crossing in the City of Delphos, Ohio, at certain hours of the day and night is protected by regulation crossing gates but such gates were not in operation at the time of the collision and were in an upright position; and that the only other protection afforded at the crossing at the time the collision occurred was an electric crossing alarm.

Further facts developed by the plaintiff's evidence disclose that on February 26, 1934, plaintiff's decedent Philip Lang, driving a motor truck and trailer belonging to The Bates Motor Transport Company of Chicago, Illinois, was engaged in interstate commerce hauling freight; that said Philip Lang, driving said motor truck and trailer, approached the Main Street grade crossing of said railroad company in the City of Delphos, Ohio, from the north and from the time he had arrived on Main Street at a point twenty-four feet north from the first or westbound track he had a clear and unobstructed view to the eastward, the direction from which the passenger train of the defendant which collided with the automobile of plaintiff's decedent, approached the crossing, from two to three thousand feet at least. That previous to the time of the happening of the collision it had been snowing in Delphos and Main Street and the crossing at which the collision occurred were covered with snow. It was further developed in plaintiff's evidence that said Philip Lang was familiar with the crossing, having passed over it many times before.

The evidence offered on behalf of plaintiff further discloses that plaintiff's decedent stopped said automobile truck twenty feet from the crossing and then proceeded up toward the crossing at a speed of not more than three miles per hour; and that from said point up until the time the truck and trailer had arrived on the tracks of the Pennsylvania Railroad Company upon which it was struck, plaintiff's decedent proceeding at a speed of not more than three miles per hour could have stopped his truck and trailer within two feet at any time, and that from such point on up to the track he had a clear and unobstructed view to the eastward from which the train approached, of two or three thousand feet.

The evidence as to the truck and trailer stopping at a point twenty feet north of the crossing, and of the speed of the truck as it approached the crossing from this point, and the distance in which it could stop, going at such speed, was given by a man named Earl Swanson who was the relief driver of the truck and was riding in the truck at the time of the collision.

This witness, who had a jacket over his head and did not see the collision, further testified that at the instant of the collision plaintiff's decedent called out "Oh, my God." This witness further testified that he did not hear the crossing alarm bell ring and did not hear the whistle on the locomotive blow and did not hear the noise of the train.

It further appears from the evidence offered in behalf of the plaintiff that Lang's senses of sight and hearing were normal and that the truck was practically new, having been used only about twenty-two days, and was in good working condition; and that the truck and trailer were thirty-seven feet in length—the tractor being twelve or fourteen feet long; and that the trailer part was struck by the engine.

The evidence does not show whether decedent knew or did not know the crossing gates were not in operation at the time the collision occurred.

Evidence offered on behalf of plaintiff tended to prove that the train was going at a speed of from sixty to seventy miles per hour immediately preceding the collision.

The evidence introduced on behalf of the defendant tended to prove that the warning bell was ringing and the whistle on the engine of the train blowing during a period of time immediately preceding the collision; that the train was running at a rate of speed of fifty or sixty miles per hour; that the Main Street of Delphos and said crossing were covered with snow; and that plaintiff had received compensation under the Workmen's Compensation Law of the State of Illinois for her decedent's death. Except as mentioned the evidence introduced by the defendant did not tend to prove any different state of physical facts than the evidence introduced on behalf of plaintiff and did not tend to prove any facts as to

the conduct of plaintiff's decedent immediately preceding the collision.

The plaintiff claimed in the pleadings filed by her that the defendant was negligent in failing to remove the ice and snow from the crossing, in violation of §8847 GC, requiring the defendant to keep the highway crossing clear of snow; that the defendant was negligent in operating the train at a high rate of speed, to wit, more than seventy-five miles per hour; that defendant was negligent in failing to sound a bell, horn or whistle in order to give plaintiff's decedent warning as to the approach of said train; that defendant was negligent in operating said train in excess of a speed provided for by an ordinance of the .City of Delphos when the gates at the crossing were not in operation.

Immediately prior to the trial of the case plaintiff asked leave to amend her petition by setting out an ordinance of the City of Delphos regulating the speed of trains.

The pertinent part of said ordinance provides that:—"It shall be unlawful for any railway company operating any railway across, over or upon any of the streets of said village, or for any engineer or conductor in the employ of any railway company to run or cause to be run, any train, car or locomotive at a greater rate of speed than eight miles per hour, unless such railway company shall erect, maintain and operate at each crossing safety gates so operated and maintained as to be closed and effectually bar the passage of teams, vehicles and pedestrians at the near approach of and passing of trains, cars or locomotives and open for teams, vehicles and pedestrians at all other times."

The defendant then moved to strike the allegation setting up the terms of the ordinance. from the petition.

The court, in the absence of the jury, heard testimony on the question of the reasonableness of the ordinance and found as a matter of law that it was unreasonable, and struck the allegations as to the ordinance from the petition on the ground that the ordinance was unreasonable.

Later in the trial the plaintiff offered the ordinance in evidence and upon objection by the defendant that the ordinance did not come within the scope of the pleadings and further that the plaintiff had failed to have the ordinance properly identified as an ordinance of the City of Delphos the court ruled that the ordinance was inadmissible.

The appellant assigns a number of errors upon which she relies for reversal of the judgment. These claimed errors involve four general propositions, as follows:—

First. That the trial court erred in directing the jury to return a verdict in favor of the defendant at the close of all the evidence and testimony.

Second. The trial court erred in striking plaintiff's allegation as to the ordinance of the City of Delphos from the petition and in excluding such ordinance from evidence.

Third. The trial court erred in admitting testimony concerning moneys received by plaintiff under the Workmen's Compensation Law of the State of Illinois.

Fourth. The trial court erred in permitting a witness to testify concerning what another witness, Swanson, said immediately after the accident as to his being asleep at the time of the collision.

These propositions will be considered in the order mentioned.

1. A determination of the first general claim of error involves the consideration of the question whether from the evidence introduced on behalf .of plaintiff a presumption or an inference of negligence on the part of plaintiff's decedent directly contributing to his injuries and death arises which is not rebutted by other evidence. Or, in other words, giving the evidence introduced on behalf of plaintiff, as well as all the other evidence in the case, the most liberal construction in favor of plaintiff and resolving all conflicts in the evidence in favor of plaintiff, whether the evidence in the case shows plaintiff's decedent guilty of contributory negligence as a matter of law, precluding recovery.

In considering this question we will treat the ordinance of the City of Delphos regulating the speed of trains as a valid enactment properly pleaded and properly admitted in evidence.

In connection with this question it will be necessary to consider the law applicable to the duty of a traveler upon a public street or highway approaching a steam railway which intersects at grade the street or highway, with one or more tracks, with the intention of crossing over, and the presumption applicable to his conduct.

In the recent case of **Detroit, Toledo & Ironton Railroad Company v Rohrs, 114 Oh St 493**, referring to such duty, it is said: "The duty is definite and is that he must look as well as listen and that he must look at a point and at a time that will make the looking effective to apprise him whether danger is near or not." And in the case of **Rusynik v Pennsylvania Railroad**

Company, 117 Oh St 530, it is held, citing the last mentioned case and others. that:—"When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with the intention of crossing over, it is the duty of such traveler, before going upon the railroad, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby."

From a consideration of these cases and the other reported Ohio cases on the subject, it is obvious that the rule that such looking and listening must be at such time and place and in such manner ▉▉▉▉ ▉ ner as will be effective to accomplish the ends designed thereby. must necessarily comprehend looking and listening at the last time and place where a traveler could stop the conveyance in which he is riding and avoid a collision between the same and a train or trains being operated on such railway track or tracks; and the omission so to do, without a reasonable excuse therefor, is negligence and will defeat an action by such person or his administrator for an injury to which such negligence contributed.

As to the duty of a traveler at a railroad crossing in a municipal corporation where there is in effect an ordinance regulating the speed of trains, and the presumptions applicable to the conduct of such traveler, it was held in the case of **Meek v Pennsylvania Railroad Company, 38 Oh St 632**, an action for damages for wrongful death resulting from a collision between the decedent and a train of cars at a railroad crossing over a public street in a municipality, that decedent's action in going upon the track immediately preceding the injury, put in question his due exercise of care for his own safety, and in such a case the burden is on the plaintiff to show he exercised such care and in support of this proposition the court cites the case of **Railroad Company v Whitacre, 35 Oh St page 627**, in which it is held "If plaintiff's own testimony in support of his cause of action raises a presumption of such contributory negligence the burden rests upon him to remove that presumption."

In the Meek case, supra, it is further held:—"In the absence of knowledge of apparent danger from an approaching train, or that these detached cars were moving toward him, and were about to cross the public street near which he was, without sufficient motive power to control them, the deceased had the right having used due caution, in going upon the track, to act on the assumption · that the defendant would conform to the requirements of the ordinance." It was further held:—"It was the duty of the deceased when he went on defendant's track, to look out for approaching trains and a violation of the ordinance by the railroad agents would not relieve him from this duty; but in the absence of apparent danger, the deceased may not have been guilty of contributory negligence, if he was lulled into security by knowing the regulations prescribed by the ordinance, and by assuming that the company would exercise such care."

It was further held in the Meek case, supra, that an ordinance regulating the speed of trains within a municipality was admissable in evidence as reflecting upon the question of the care exercised by the deceased in view of the fact that the defendant was guilty of an act forbidden by an ordinance. which he had no reason to anticipate; and proof that defendant was violating this ordinance, was in its nature evidence tending to show defendant's liability for the injury resulting from not observing it.

The case of Meek v Pennsylvania Railroad Company, supra, was followed in the case of **Hart v Devereaux, Receiver, 41 Oh St, page 565**, and the case of Hart v Devereaux, Receiver, was approved and followed in the case of **Norris, Executrix v Jones, Receiver, 110 Oh St 598**, as supporting the proposition that a traveler upon a street in a village crossing the track of an interurban railway has a right to presume that the interurban railway would conform to an ordinance of the city council prohibiting the running of interurban cars through its limits at a rate of speed greater than that named in the ordinance; and if the traveler acts in accordance with such presumption in the absence of knowledge of the fact that the interurban railway company is exceeding such speed limit in running an interurban car, such action on the part of the traveler will not of itself constitute an act of negligence.

It was further held in this case that where the driver of an automobile is killed at the intersection of two streets in a village by collision with an interurban car, which is running at a speed which violates a village ordinance, and the evidence affords no proof whatever as to the speed at which the decedent was driving his automobile, nor as to his conduct immediately

preceding the accident, it is error for a reviewing court to reverse a judgment for the plaintiff on the ground that a clear presumption of contributory negligence arises from plaintiff's evidence. This decision is in turn cited with approval in the case of **Trenton v Cox, 118 Oh St 247** at page 254. To the same general effect is the case of **Traction Company v Brandon, 87 Oh St 187**, at page 195, a death case not involving a street ordinance.

The presumptions generally applicable to cases in which persons are killed by accidents to which there are no eye witnesses, are stated in Jones Commentaries on Evidence, Second Edition, Volume 1, page 422, to be as follows:—"Generally, in the absence of proof tending to show the contrary, where a person is killed by an accident to which there are no eye witnesses, the presumption of the law is that he was in the exercise of due care. Thus, it is presumed that a person stopped, looked and listened before crossing a railroad track. The presumption is usually invoked only in such cases, and the true rule is that, in the absence of witnesses as to what deceased did or failed to do by way of precaution at and immediately before the time of injury, a presumption arises that, prompted by natural instinct, he exercised care for his own safety. This presumption is of fact, only, and is for consideration of the jury; it rests upon the observe principle of conduct that men usually and ordinarily exercise care for their own safety; and hence, if there is direct evidence as to how the deceased was conducting himself at the particular time and on the particular occasion, the presumption can have no weight and does not obtain. Clearly, the presumption cannot be indulged where the plaintiff's own evidence is such as to negative the truth thereof."

The rule as to presumptions above quoted is subject to the qualification that notwithstanding there have been no eye witnesses of the accident resulting in death, and consequently no direct positive testimony as to any negligence on the part of the deceased, nevertheless the circumstances surrounding the accident, as revealed by the evidence, may be such that the presumption of due care is entirely rebutted and displaced. Kwiotkowski v Railway Company, 70 Mich., 549; 38 N. W. 463. Gillette v Michigan United Traction Company, 171 N. W. 536; Gunterman v Michigan Central Railway Company, 168 Mich., 37; 133 Northwestern, 940.

The above cases and authorities establish the following rules applicable to actions such as the case at par for damages for wrongful death resulting from collisions between travelers and trains at railroad crossings at grade over public streets and highways:—

1. Where the decedent for whose death damages are claimed, goes upon a railroad crossing track or tracks immediately preceding an injury his action in so doing raises a presumption of contributory negligence and the burden rests upon the plaintiff to remove such presumption, but such presumption may be rebutted by evidence of facts constituting a reasonable excuse for his so doing.

2. In the absence of knowledge of apparent danger from an approaching train the decedent in going upon a railroad track or tracks at a public street or highway crossing, for the purpose of crossing the same, has the right to act on the assumption that the railway company in the operation of its trains will conform to the requirements of an ordinace regulating the speed of trains.

3. Where there is an ordinance of a municipality regulating the speed of trains such ordinance is admissible as reflecting upon the question of care exercised by the decedent where it is charged and the proof tends to show that the train colliding with the decedent was being operated at a speed in excess of that provided by such ordinance.

4. A person in an automobile upon a street in a municipality crossing the track or tracks of a railroad company at a public street or highway crossing has the right to presume that the railroad company in the operation of its trains will conform to an ordinance of the city council prohibiting the running of trains through its limits at a speed greater than that named in the ordinance; and if the traveler acts in accordance with such presumption, in the absence of knowledge of the fact that the railroad company is exceeding such speed limit in running the train causing the injuries, such action upon the part of the traveler will not of itself constitute an act of negligence.

5. In the absence of proof tending to show the contrary, where a person is killed by an accident to which there are no eye

witnesses the presumption of law is that he was in the exercise of due care.

6. Notwithstanding there have been no eye witnesses of the accident resulting in death and consequently no █ direct positive testimony as to any negligence on the part of the deceased, nevertheless the circumstances surrounding the accident as revealed by the evidence may be such that the presumption of due care is entirely rebutted and displaced.

7. Where the driver of an automobile is killed at a railroad crossing over a public street in a municipality, by █ collision with a train which is running at a speed which .violates a municipal ordinance, and the evidence affords no proof whatever as to the conduct of such driver immediately preceding the collision, nor as to his knowledge of the fact that the train was being operated by the railroad company at a speed in excess of that provided by such ordinance, the presumptions of the law are that the decedent, in the exercise of due care: (a) Looked both ways and listened for the approach of trains at such time and place and in such manner as would be effective to accomplish the ends designed thereby before going upon the railroad track; (b) Assumed that the railroad company would not violate the terms of such ordinance in the operation of its train; (c) And having so looked and listened and assumed, drove upon such track; but such presumptions are applicable only where the evidence affords no proof whatever as to the conduct of such driver immediately preceding the collision, nor as to his knowledge of the fact that the train was being operated by the railroad company at a speed in excess of that provided by such ordinance, and are for the consideration of the jury in connection with the evidence in the case; and it is a question for the jury in cases where such presumptions are applicable, taking into consideration the presumptions and evidence in the case, as to whether the decedent was in the exercise of due care.

It will be noted that while all of the rules mentioned have general application to actions for damages for wrongful death resulting from collisions between travelers and trains at railroad crossings at grade over public streets and highways, the last three rules mentioned apply only in cases where there is no direct testimony as to the conduct of the decedent immediately preceding and at the time of the collision, and as there is direct evidence in the case at bar as to the conduct of the decedent at such times the last three mentioned rules do not apply to the case at bar. And it will also be noted that under the fourth rule above mentioned the right of the decedent traveler to presume that the railroad company in the operation of its trains will conform to a speed ordinance and to act on such presumption is predicated on the absence of knowledge of the fact by the traveler that the railroad company in running the train causing the injury is exceeding the speed limit.

The evidence in the case at bar shows that the decedent stopped his truck consisting of a tractor and trailer thirty-seven feet in length, at a point twenty feet north of the north track of the crossing and that from this point all the way to the tracks over the crossing he had a clear and unobstructed view in the direction from which defendant's train was approaching of two thousand feet, and that from this point he proceeded directly without stop or interruption to drive his truck upon the tracks of the defendant over the crossing directly in front of the train of the defendant approaching from the east over said crossing; that he was operating his truck at a speed of not more than three miles an hour and could stop the same within two feet.

Under this evidence, if the decedent had looked and listened for the approach of the train at a point four feet north of the north track of the crossing, being the last time and place where he could have stopped the truck which he was driving and avoided a collision between the same and the train being operated thereon by the defendant, he could have stopped his truck within a distance of two feet and avoided collision with such train including the part thereof that extended beyond the tracks. And as the train struck the truck immediately after it was driven on the track it was necessarily so close to the crossing at the time the truck driven by decedent came to the point four feet north of tracks, that if he had looked and listened at this point he could not have failed to observe the approaching train and take cognizance of the fact that it was exceeding the speed limit provided by the ordinance and it would be impossible for him to drive his thirty-seven foot truck across the track without colliding with the train. It is therefore clear that the decedent either failed to look and listen for the approach of the train at the point mentioned, or, if he looked and listened, failed to exercise any care for his

own safety and that his ▮▮▮▮▮▮ failure so to do directly and proximately contributed to the injuries sustained by him which resulted in his death. So that irrespective of said speed ordinance of the City of Delphos plaintiff's decedent, under the evidence, was guilty of negligence directly and proximately contributing to his injuries, which precludes plaintiff from any recovery herein. The court therefore did not err in directing a verdict in favor of the defendant at the close of all the evidence.

2. In our consideration of the first assignment of error we have treated the ordinance of the City of Delphos as being properly pleaded and properly in evidence and have held that notwithstanding the provisions of the ordinance plaintiff's decedent was guilty of contributory negligence which precluded a recovery by plaintiff. Therefore if the court erred in striking plaintiff's allegations as to such ordinance, from the petition, and in excluding such ordinance from evidence, such error did not prejudicially affect the rights of plaintiff.

3. The same reasoning and rule apply to the admission or testimony concerning moneys received by plaintiff under the Workmen's Compensation Law of the State of Illinois.

4. The fourth ground of error is that the trial court erred in permitting a witness to testify what another witness, Swanson, said immediately after the accident as to being asleep at the time of the collision. This testimony could only go to the weight of Swanson's testimony. In our consideration of the first ground of error we have given full credit to the testimony of Swanson on behalf of the plaintiff and giving it full credit have held that plaintiff is precluded from recovery. Consequently whether the court erred in the admission of this testimony is immaterial.

Finding no error in any of the particulars specified in the plaintiff's briefs the judgment of the Court of Common Pleas will be affirmed at costs of appellant.

Klinger, J, concurs.

Crow, J, concurring. The judgment of the trial court should be affirmed as has been done on the sole ground that plaintiff's own evidence proved as a matter of law that the decedent was guilty of contributory negligence because of his failure to do the things established by law as essential to the exercise of due care on his part when going toward, on and over the crossing, which situation makes superfluous any discussion of presumptions.

The many cases reported by the Supreme Court and other courts of Ohio, make it wholly clear that there is a basic difference between cases where plaintiff's own evidence, as a matter of law proves contributory negligence, and those where such evidence as a matter of law, raises a presumption of contributory negligence which is not rebutted by any substantial evidence.