## BALTIMORE & O. R. CO. v. JOSEPH.

### SAME v. WINLAND.

#### Nos. 8148, 8149.

.Circuit Court of Appeals, Sixth Circuit.

June 7, 1940.

Sidney D. L. Jackson, Jr., of Cleveland, Ohio, and Roy W. Lewis, of St. Clairsville, Ohio (Earl R. Lewis, of St. Clairsville, Ohio, Sidney D. L. Jackson, Jr., of Cleveland, Ohio, Thornburg & Lewis, of St. Clairsville, Ohio, and Baker, Hostetler & Patterson, of Cleveland, Ohio, on the brief), for appellant.

John D. Gardner, of Steubenville, Ohio (John D. Gardner, of Steubenville, Ohio, and Dixon & Dolfi, of Martins Ferry, Ohio, on the brief), for appellees.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

These appeals are from judgments in suits to recover for the wrongful death of Wilma Winland and for personal injuries and other damages sustained by Thomas Winland. The suits arose out of the same accident, were tried together in the District Court and argued together here.

On Sunday, February 7, 1937, Winland and his wife, Wilma, took his tools to the Stanley Mine, in Belmont County, Ohio, where he was to begin work as a coal miner the following morning. On their return, while crossing appellant's railroad tracks, the 1930 Chevrolet Sedan in which they were travelling was struck by appellant's train. Mrs. Winland was killed and Winland suffered personal injuries and damages to his car.

The only road from the mine to the main highway is a somewhat tortuous and hilly one. Bearing generally southwest, it crosses appellant's tracks, which run in a southeasterly and northwesterly direction, at a 60° angle. As it nears the scene of the accident it is lower than the tracks, but for a distance of thirty feet adjacent thereto is on the same level. The traveler's view to the west is obstructed by a wooded embankment on his right until he is near the tracks. Appellant introduced evidence to show that a pedestrian standing in the road fifteen feet from the tracks could see a man six feet tall walking westerly on the eastbound track until he had gone 496 feet from the intersection; at a distance of ten feet, he could see him 521 feet from the crossing, and from the first, or westbound, track, he could see him 561 feet away. Winland, who was driving, testified that he stopped his car five or six feet from the first, or westbound, track; that both he and his wife looked each way and listened; that neither saw or heard the train; that he put his car in low gear and crossed the first track, looking to the east, or his left, as he did so; that, as he started to cross the second, or eastbound, track, he looked again to the west, or to his right, and for the first time saw the train; that it was approaching at about forty-five miles an hour, but that he could not tell how far away it then was; that his car was moving about five miles an hour; that the collision occurred about two seconds after he started his car and about two feet from the point at which he first observed the train; and that he could have stopped his car within a foot at the rate of speed he was going. Appellant's engineer, fireman and brakeman contradict Winland's testimony, which was corroborated by three nearby residents, that the train's whistle was not blown immediately before the accident.

The crew does not claim, however, that the whistle was blown at a distance greater than 1,200 feet from the crossing, or that the bell, was rung. at all; hence, it must be assumed that appellant violated Ohio General Code, § 8853,[1] and was thereby guilty of negligence per se.

The train involved in the accident consisted of an engine, one hundred empty freight cars and a caboose. Appellant's uncontradicted expert testimony shows that air brakes become operative upon a locomotive about three seconds after they are applied, and upon the rest of the train at the rate of about ten cars per second; and that a train of this size, travelling at the rate of twenty miles per hour, cannot be stopped in less than five to six hundred feet after the brakes become operative over the whole train.

The brakeman testified that he was on the brakeman's seat on the left side of the engine, looking ahead as the train approached the crossing; that he saw the Winland car, then moving about ten miles an hour, when it was about fifteen feet from the first, or westbound, track, the engine then being about 400 feet from the crossing; that, when the car was about five and the engine about 300 feet from the crossing, he, realizing the car was not going to stop, shouted to the engineer to stop, and immediately heard the air brakes being applied; that he felt the train begin to slow down about the time the engine hit appellee's car, which had pulled onto the eastbound track and stopped. The members of the crew testified that the train's speed, prior to the application of the brakes, was approximately twenty miles per hour, and this testimony is contradicted only by Winland's estimate. It is undisputed that the engine stopped less than 500 feet from the crossing.

Appellant's motions for a directed verdict, upon appellees' opening statement, at the close of their evidence and at the close of all the evidence, were overruled, and both cases were submitted to the jury upon a charge that embodied the last clear chance doctrine.

The testimony of Winland that he stopped his car before he started across the tracks and was travelling not faster than five miles an hour as he approached the track on which his car was hit was uncorroborated and contradicted. Taking the view of the evidence most favorable to Winland, we are nevertheless of the opinion that it was error to submit his case to the jury. The physical facts were such that, had he looked and listened with reasonable care, after stopping his car and before attempting to cross the tracks, as he testified and as the law required, he could not possibly have failed to see or hear the approaching train. He testified that about two seconds elapsed between the time he started to cross the tracks and the time he was struck. His estimate that the train was travelling forty-five miles per hour was made at a point almost directly in front of the engine and in the interval required for his car to travel two feet at a speed of five miles an hour,—circumstances scarcely favorable to the formation of an accurate judgment. If the speed of the train was forty-five miles per hour, however, it would have taken eight or nine seconds for the engine to travel the 521 to 561 feet of distance visible from the point at which Winland testifies he stopped his car; and it would have taken more than twice that time if the train was travelling twenty miles an hour as estimated by its crew, and as corroborated by the distance within which the train was stopped after the brakes were applied.

Winland's case should not have been submitted to the jury if the evidence most favorable to him, considered in the light of the established physical facts, shows that the accident could not have happened had he used reasonable care for his own safety. That he was obliged to exercise such care cannot be questioned. He testified that he stopped, listened and looked

---

[1] "*Signals at railroad crossings.*— Every company shall attach to each locomotive engine passing upon its road, a bell of the ordinary size in use on such engines, and a steam whistle. When an engine in motion and approaching a turnpike, highway or town road crossing or private crossing where the view of such crossing is obstructed by embankment, trees, curve or other obstruction to view, upon the same line therewith, and in like manner where the road crosses any other traveled place, by bridge or otherwise, the engineer or person in charge thereof, shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing, and ring such bell continuously until the engine passes the crossing."

in each direction before starting across the tracks, but we are of the opinion that if he did this he did not necessarily satisfy the requirement of reasonable care. If he had looked to the west after starting to cross the first track and before reaching a position of peril in relation to the second, or eastbound, track, we think no one would regard him as having exercised more than reasonable care. According to his own estimate of the train's speed and the length of time his machine was in motion, the train must have been in plain view and less than 132 feet from the crossing when he started across.

However, whether the exercise of reasonable care required Winland to look to the west any time after starting, it is clear that he should have done so when he started his car. At that time, he had an unobstructed view of the track for a distance of between 521 and 561 feet in the direction from which the train was approaching. According to his own estimate of the train's speed, it must have been visible between eight and nine seconds before it reached the crossing, and, according to other evidence in the case, it was visible more than twice that long. Yet, according to his own testimony, only two seconds elapsed between the time he started and when he was struck. The weather was clear, the temperature above freezing, the right front window of his car partially open, and there is no suggestion that he had any impairment of vision, or that there was anything to obstruct his view of the more than 521 feet of track in the direction from which the train approached. We are of the opinion that no one could come to any conclusion other than that he failed to look to see whether a train was approaching from the west.

In the case of Detroit, Toledo & Ironton R. Co. v. Rohrs, 114 Ohio St. 493, 502, 151 N.E. 714, 717, discussing the duty of a traveler about to cross a grade crossing, the Supreme Court of Ohio said: "The duty is definite, and is that he must look as well as listen, and that he must look from a point and at a time that will make the looking effective to apprise him whether danger is near or not."

Discussing plaintiff's testimony that he did look and listen, the court added: "Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did. To hold otherwise would simply be a manifest absurdity, and the doctrine that the traveler in a vehicle upon the highway when coming to a railroad grade crossing must look and listen, might as well be abandoned if one so placed, in broad daylight, can say that he looked in a given direction where there was a locomotive moving toward the crossing, and not farther than 75 feet away, and that he could not see it."

In Lang v. Pennsylvania R. Co., 59 Ohio App. 345, 357, 18 N.E.2d 271, 276, in which an almost identical question was presented, the court said: "Under this evidence, if the decedent had looked and listened for the approach of the train at a point 4 feet north of the north track of the crossing, being the last time and place where he could have stopped the truck which he was driving and avoided a collision between it and the train being operated thereon by the defendant, he could have stopped his truck within a distance of 2 feet and avoided the collision with the train. As the train struck the truck immediately after it was driven on the track, it was necessarily so close to the crossing, at the time the truck driven by decedent came to the point 4 feet north of the tracks, that, had he looked and listened at this point, he could not have failed to observe the approaching train and take cognizance of the fact that it was exceeding the speed limit provided by the ordinance and that it would be impossible for him to drive his 37-foot truck across the track without colliding with the train. It is therefore clear that the decedent either failed to look and listen for the approach of the train at the point mentioned, or, if he looked and listened, failed to exercise any care for his own safety and that his failure so to do directly and proximately contributed to the injuries sustained by him which resulted in his death. Irrespective of the speed ordinance of the city of Delphos, plaintiff's decedent, under the evidence, was guilty of negligence directly and proximately contributing to his injuries, which precludes plaintiff from any recovery herein. The court therefore did not err in directing a verdict in favor of the defendant at the close of all the evidence."

See, also, Pennsylvania R. Co. v. Moses, 125 Ohio St. 621, 184 N.E. 8.

The District Court erred in not directing a verdict for appellant at the close of all the evidence.

■ Appellant also assigned as error in Winland's case the court's inclusion in its charge of the last clear chance doctrine. That doctrine does not apply until the negligence of the injured party has ceased. Winland testified that he stopped, looked and listened before going upon the tracks, that his rate of speed thereafter was five miles an hour and that he could have stopped his car within a foot. During all this time he could not have avoided seeing the train if he had looked. Hence, according to his own testimony, he could have avoided the accident any time before his car arrived within two or three feet of the second, or eastbound, track. His negligence was operative until that time, and obviously no amount of care on appellant's part could thereafter have prevented the accident. It was therefore error for the court to include the doctrine of last clear chance in its instructions. Cleveland R. Co. v. Masterson, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15; Brock v. Marlatt, 128 Ohio St. 435, 191 N.E. 703.

■ In the appeal from the judgment in favor of Mrs. Winland's estate, other factors must be considered. It cannot be held as a matter of law that her injury could not have occurred had she exercised the reasonable care she was obliged to exercise to protect her own safety. This required her to look and listen and warn Winland of any train's approach. She too must have seen the train if she looked as required by law; but appellant had the burden of proving her contributory negligence and was unable to show that she did not warn Winland of the train's approach after she saw or could have seen it, or that she failed to take any step by which the accident could have been avoided. Cf. Street Railroad Co. v. Nolthenius, 40 Ohio St. 376; Hocking Valley R. Co. v. Wykle, 122 Ohio St. 391, 171 N.E. 860. The District Court did not err in submitting Mrs. Winland's case to the jury on the question of contributory negligence.

■ Nor was it error in that suit to include the last clear chance doctrine in the charge to the jury, for, though she may have been negligent in not seeing the approaching train, it is possible that she was thereafter unable to extricate herself from the danger, and that appellant's employees could have become aware of her danger soon enough after her negligence ceased to have averted the accident by the use of reasonable care. Cf. New York, C. & St. L. R. Co. v. Kistler, 66 Ohio St. 326, 64 N.E. 130; Pennsylvania R. R. Co. v. Crouse, 6 Cir., 286 F. 376.

The judgment in favor of the administrator of Mrs. Winland's estate, in Case No. 8148, is affirmed; the judgment in favor of Thomas Winland, in Case No. 8149, is reversed, and the cause remanded for a new trial in accordance with the views expressed herein.