## HELLARD v. BALTIMORE & O. R. R.

### No. 8005.

Circuit Court of Appeals, Seventh Circuit.

Oct. 27, 1942.

Sidney S. Miller and Harold H. Bredell, both of Indianapolis, Ind., for appellant.

Howard S. Young, Harry P. Cooper, Jr., Hilbert S. Cofield, Harvey J. Elam, Irving M. Fauvre, and Howard S. Young, Jr., all of Indianapolis, Ind., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Plaintiff was seriously injured in a truck-train collision at Hamilton, Ohio, on September 25, 1940, at 1 P.M. To recover damages resulting therefrom, this action was begun. A jury trial was had and a verdict of $15,000 was rendered, for which amount judgment was entered. This appeal is from said judgment.

Defendant's alleged negligence and plaintiff's alleged contributory negligence supply the issues over which the outcome of this appeal turns. As to each of these two issues the defendant insists that no jury question was presented by the evidence.

Plaintiff was driving a truck northerly on Central Avenue, which nearly parallels defendant's railroad tracks. The street finally crosses the railroad tracks, at which point the collision occurred. There were no automatic warning signals or gates at the crossing, but a flagman was there and had been maintained there for some twenty-five years. A municipal ordinance provides for a maximum train speed limit of 25 miles per hour over a crossing guarded by a flagman.

Beyond these few facts, which were stipulated, there is well nigh complete conflict in the evidence. Of numerous witnesses who testified, the majority were railroad employees. A few so-called bystanders gave their versions of the smash-up.

There was evidence that the northbound passenger train which struck plaintiff was going more than 25 miles (range is from 25 to 70 miles) at the time it reached the crossing. Some evidence, there was, that it was a few minutes late. Plaintiff was closely following another truck which passed plaintiff's truck going over the crossing. Witnesses described plaintiff's travel differently. At least one witness said of him, "He was going one mile an hour," "he stopped before he approached the main track," "he stopped directly upon the main track on which he was hit."

The man driving the truck ahead of plaintiff said he had slowed down, so necessarily plaintiff must have done likewise.

The crew of the train and others testified that the train whistles were blowing and the bell was ringing as it approached the crossing. Other witnesses said there was no train signal or they heard none. The engineer testified that he applied the

emergency brakes of the engine and to do so had to relinquish ringing the bell, but it had rung to that point.

There was a watchman at the crossing. He died the following year at the age of 77, and before the trial. Plaintiff testified he saw the watchman who had just come out of his shanty, but that the watchman was looking northward (away from the oncoming train) and had his "stop" sign resting on the ground. A driver coming from the opposite direction, who had crossed the tracks just before the accident, said that he saw the watchman stroll out of the shanty with his sign down, and that he gave no signal of the oncoming train. The watchman had a whistle. Some witnesses say he blew it; others say he did not.

The avenue on which plaintiff was traveling sloped gradually upward to the crossing, the tracks being about three feet above the level of the street. An engineer testified as to the distance a person could see from various points on the approach and stated that if the view were unobstructed, one could see to the south for a mile.

The railroad tracks at the crossing were five in number; one on the east, being a switch track; then a lead track; then two main tracks; and the western track. Plaintiff was struck as he crossed the middle track,—the northbound main track.

There was a switch engine to the north of the crossing on the switch track. It was stationary, and the members of the crew were finishing their lunch at the time of the accident.

*The sharp, irreconcilable conflict is over the presence of box cars on the track to the south of the crossing.* This fact question, so sharply controverted, was of well nigh controlling importance. If there were no cars on the switch track there was no obstruction to the plaintiff's view. If there were no obstruction to his view, plaintiff could have seen the oncoming train a mile away. As the train must have been less than 400 feet away as he started over the crossing, plaintiff was, if his view were unobstructed, necessarily guilty of contributory negligence as a matter of law, in driving onto the tracks in front of a train.

Numerous witnesses stated positively there were no cars standing on the tracks south of the crossing. Others stated that there was at least one or two cars standing on the switch track, one-third the distance

between the crossing and a coal yard (458 feet south from crossing). Others testified (including railroad employees) that there were some cars standing on a track, but they were far down beyond the coal yards, perhaps a mile away. If as far from the crossing as these witnesses said, these cars could not obstruct plaintiff's vision.

Plaintiff said he had gone over this crossing about 325 times in the past few years and was very familiar with it. He also knew a flagman was there to warn and protect travelers.

Defendant assigns error because the court refused to direct a verdict in its favor and also refused to set aside the verdict.

Its chief contention is that plaintiff "was guilty of contributory negligence, as a matter of law, in failing to use reasonable care for his safety, in keeping a look-out for the approaching train and in failing to use his senses of sight and hearing to discover its approach while he was in a position of safety and before driving upon the track upon which the train was coming."

It also argues that under the law of Ohio, which controls, a traveler must be on his guard despite the existence of negligence on the part of the railroad in the failure of its signals, or its watchmen. Uncapher v. Baltimore & O. R. Co., 127 Ohio St. 351, 188 N.E. 553; Lohrey v. Baltimore & O. Ry. Co., 131 Ohio St. 386, 3 N.E.2d 54.

While it might be argued, and persuasively, that there were no box cars on the track and no obstructions which prevented plaintiff from seeing the oncoming train as he drove onto the crossing, neither the District Court, nor we, can say there was *no evidence* to that effect.

The plaintiff, and at least one other witness, so testified. The witnesses may have been somewhat confused by the cars far to the south. And there was some ambiguity or obscurity in this testimony because of these other cars, yet we cannot ignore the positive affirmative testimony to this effect.

In other words, we must assume that the jury could, and did, find there was a box car, or cars, on the side track, less than 200 feet from the crossing and they interfered with the plaintiff's seeing down the track upon which the train was coming. In fact, a jury was well justified, if it believed this evidence, in finding that the

plaintiff could not see the oncoming train when he approached the first of the crossing tracks.

■ But this does not settle the ultimate question before us. It lessens plaintiff's burden. It justifies the refusal to direct a verdict on this ground. It prevented the directing of a verdict, which the evidence otherwise would have necessitated, but for the fact that plaintiff could not be charged with contributory negligence for not seeing, if defendant had so placed its box cars as to prevent the traveler's seeing, the oncoming train.

But conceding this factual situation to be as plaintiff contends on this first factual dispute, the record still presents a most serious question as to plaintiff's contributory negligence as a matter of law. Even though plaintiff did not see the oncoming train when he first drove onto the track, he was not justified in proceeding in a careless or negligent manner. In other words, as he moved across the first track and before he came to the track on which the train was traveling he reached a spot where he could have seen the approaching train. It could not have been more than fifty or seventy-five feet away. Its whistle was blowing. Its bell was ringing. The noises of a fast moving train were necessarily present.

It is inconceivable that one could possibly fail to see the train if he looked toward it. In fact, we must assume that plaintiff did not look a second time to the south; otherwise he would have seen the train and would not have driven upon the track before it. If driving one mile, or even ten miles, an hour, he could have stopped in time to avoid the collision. The troublesome question therefore is over his failure to see the oncoming train after he got by the obstruction which first prevented his view. The distance which he traveled was about fifteen feet. Plenty of time to stop, there was. However, we are not considering what were the greatest precautions a driver could take, but rather what precaution the ordinary driver, under the same circumstances, would have taken.

In reaching our conclusion on this very close question, we are influenced by two facts which we believe could be, and were, persuasive with the jury.

First, the action of the flagman. The traveler at a crossing where a flagman is stationed, may, we think, govern his action, *to a certain extent,* by the flagman's encouragement to proceed, or direction to stop. This accident occurred in Ohio, and the Ohio Supreme Court has spoken on the significance of the presence of a flagman at a railway crossing.

■ While we think there is some difference between the holding in Cleveland, etc., R. Co. v. Schneider, 1888, 45 Ohio St. 678, 17 N.E. 321, and Uncapher v. Baltimore & O. Ry. Co., 127 Ohio St. 351, 188 N.E. 553,* we are satisfied that under the Ohio decisions a traveler may still be guilty of contributory negligence even though a flagman is present, if he failed to ascertain and to act upon the facts which his senses would have supplied had he used the care and precautions which the ordinary automobile driver would have used under like circumstances.

On the other hand, we believe the decisions of Ohio, as well as other State Supreme Courts, are to the effect that the presence of a flagman affords some protection to the traveler and a traveler may, and will, rely, to a certain extent (the degree varying with the different situations) upon the action of the flagman. On the other hand, it is equally clear that the presence of a flagman does not dispose of the defense of contributory negligence altogether. In short the defense of contributory negligence may be shown and will bar recovery although there is a flagman at a crossing and the said flagman is negligent or fails in his duty. The defense still is a factual one, with each case presenting its individual facts, which facts determine the issue.

The second factor in this case is the action of the truckman immediately ahead of the plaintiff. It is fair to assume that neither he nor the plaintiff was seeking self-destruction. This driver apparently failed to see the train and he, too, was led onto the crossing just in front of the train by the nonaction of the flagman.

■ Considering all the circumstances, we cannot say that the court erred in not taking the case from the jury.

The judgment is affirmed.

* To like effect, see Lohrey v. Baltimore & O. Ry. Co., 131 Ohio St. 386, 3 N.E.2d 54; Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597; and Lang v. Pennsylvania R. Co., 59 Ohio App. 345, 18 N.E.2d 271.