## PRICE v. NEW YORK CENT. SYSTEM.
### Civ. A. No. 25902.

United States District Court
N. D. Ohio, E. D.
March 22, 1950.

McConnell, Blackmore, Cory & Burke, Cleveland, Ohio, for plaintiff.

Paul Lamb, Cleveland, Ohio, for defendant.

SHACKELFORD MILLER, Jr., Circuit Judge.

Plaintiff sought by this action to recover $100,500.00 for personal injuries and property damage resulting from a railroad crossing accident in Crestline, Ohio, at about 2:47 a.m. on January 22, 1946. Plaintiff's car, which he was driving at the time, was struck by a train of the defendant at the Bucyrus Street crossing. Plaintiff charged negligence on the part of the defendant, while defendant denied negligence on its part and charged contributory negligence on the part of the plaintiff.

At the close of all the evidence, the defendant moved for a directed verdict on the ground that the plaintiff's negligence proximately contributing to his injury was established by the evidence as a matter of law. The Court reserved its ruling on the motion and submitted the action to the jury. The jury returned a verdict in favor of the plaintiff for $12,500.00, on which judgment was entered. The defendant has moved the Court to set aside the verdict and judgment and enter judgment in its favor in accordance with its motion for a directed verdict, as provided by Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

The tracks of the defendant are described in the evidence as running north and south. The train was northbound. Plaintiff was driving his car eastwardly on Bucyrus Street which crossed the tracks at an angle of 44 degrees on his right. On the right side of Bucyrus Street, before reaching the crossing, were some bushes some 5 to 5½ feet in height. The east end of these bushes was 31 feet from the west rail of the southbound track measured parallel to the street, and 21 feet measured at right angles to the track. Plaintiff was very familiar with the crossing. Plaintiff testified that he stopped his car about 10 feet past the end of the bushes, that he looked to the left and right, saw no train or headlight, heard no whistle or bell, shifted into low gear and

entered the crossing at a speed of approximately three miles per hour. He stated at one point that his car was stopped for probably half a minute before he started up, and at another point that it took approximately two seconds to get his car moving from a stopped position. He did not remember crossing the southbound tracks which were between him and the northbound tracks on which the accident occurred, or any details of the accident after starting across the intersection. He had no recollection of at any time seeing the train which struck him.

Photographs, maps, and the testimony of a surveyor showed the northbound track on which the train was running to be straight for an indefinite distance to the south or plaintiff's right. At a point in the center line of Bucyrus Street 60 feet west of the center line of the northbound track, a person looking southwardly to his right had an unobstructed view of over a mile, and at a point a few feet closer to the track there was an unobstructed view for an indefinite distance. A person in a car on Bucyrus Street would have to look to his right at an angle of about 130 degrees in order to obtain such a view of the track. It was 27 feet from the west rail of the southbound track to the east rail of the northbound track. Plaintiff testified that a friend was seated on the driver's seat to his right, and that he had to lean forward on the steering wheel in order to see past his friend to the right, and in that position he was able to see southwardly only as far as the north end of the Y building, or Union depot, a distance of approximately 350 feet. The night was cold, snow was on the ground, the windows in the car were up, but the visibility through the windows was good. The plaintiff testified in making such a look to the right he saw no train and heard no warning of any approaching train. The speed of the train, according to the evidence most favorable to the plaintiff, was about 45 miles per hour. The evidence is uncontradicted that a strong headlight on the engine was burning and functioning in its normal manner.

 The Court is of the opinion that under the Ohio law plaintiff was guilty of contributory negligence as a matter of law, and that defendant's motion for a directed verdict should be sustained. The applicable Ohio law is stated by the Supreme Court of Ohio in Detroit, Toledo & Ironton Rd. Co. v. Rohrs, 114 Ohio St. 493, 151 N.E. 714, 716. It is there said with respect to the duty of a traveler upon a highway when approaching a steam railroad grade crossing—"This duty has been defined many times by this court and by many other courts, and it is that the traveler must look and listen for the approach of trains before crossing, and furthermore that he must look and listen at a place and in a manner that will make the looking and listening effective. * * * Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did. * * * The duty is definite, and is that he must look as well as listen, and that he must look from a point and at a time that will make the looking effective to apprise him whether danger is near or not." The Court held in that case that under facts similar to those in the present case the trial court should have granted the motion to direct a verdict for the defendant. Although the accident in that case was at 8 o'clock in the morning, the ruling has been approved and applied in a later case where the accident occurred about 2:30 a.m. and the locomotive was being operated with its headlight burning brightly. Woodworth, Adm'x v. New York Central R. Co., 149 Ohio St. 543, 80 N.E.2d 142. The ruling of the Rohrs case has been consistently followed by other Ohio cases in addition to the Woodworth case. Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538; Pennsylvania R. Co. v. Moses, 125 Ohio St. 621, 184 N.E. 8; Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597; Lang, Adm'x v. Pennsylvania R. Co., 59 Ohio App. 345, 18 N.E.2d 271; Grove v. City Ry. Co., 78 Ohio App. 37, 64 N.E.2d 429; Bow-

man v. B. & O. Rd. Co., 86 Ohio App. 129, 90 N.E.2d 390. The rule has been heretofore followed and applied by the Court of Appeals for this Circuit. Detroit, Toledo & Ironton R. Co. v. Yeley, 6 Cir., 165 F.2d 375; Baltimore & O. R. Co. v. Joseph, 6 Cir., 112 F.2d 518, certiorari denied, 312 U. S. 682 61 S.Ct. 551, 85 L.Ed. 1121, rehearing denied 312 U.S. 714, 61 S.Ct. 710, 85 L.Ed. 1144.

The evidence in the present case shows that at the point where the plaintiff stopped his car there was an unobstructed view of the tracks to the right for over a mile, and at a point closer to the intersection there was an unobstructed view to the right for an indefinite distance. The Rohrs case says specifically that the traveler must look "from a point and at a time that will make the looking effective." In the present case the plaintiff's excuse for attempting the crossing is that he did not see the train, but there can be no doubt that there was a point from which the plaintiff could easily have made his looking effective and seen the approaching train if he had looked as he should have looked before entering the intersection. It seems clear that the plaintiff either did not look at all, or did not look "from a point and at a time that will make the looking effective."

■ In the present case there is an additional reason supporting the ruling. The plaintiff, after entering the intersection, had to cross the southbound tracks and travel the distance between the southbound and northbound tracks before reaching the northbound tracks on which the accident occurred. He was traveling at a speed of only three miles per hour and the headlight of the on-coming engine was burning brightly. A most casual look to the right would have disclosed the close proximity of the on-coming train. The car could have been stopped within a foot or two. The Court believes that the duty to look and listen effectively is not fulfilled by merely looking and listening at a point some 10 feet or more from the beginning of the intersection. In New York, C. & St. L. Railroad Co. v. Kistler, 66 Ohio St. 326, at page 336, 64 N.E. 130, at page 133, the Court said: "There should be such looking before going upon the track, even though there was

a looking farther away when no train was seen approaching." In Woolley v. Cincinnati, Hamilton & Dayton Ry. Co., 90 Ohio St. 387, 108 N.E. 1135, the Court approved a charge to the jury that the traveler's duty to exercise reasonable care to discover an approaching train "continued until he was over the crossing and the danger was passed." In Pennsylvania R. R. Co. v. Rusynik, supra, the Court said in 117 Ohio St. at page 538, 159 N.E. at page 828, "The time to use his senses for his own protection was just before going into the zone of danger, and they should be employed in a manner that would make their use, both the looking and listening, effective." In Patton v. Pennsylvania R. R. Co., supra, the Court observed that if the traveler "had listened immediately before going upon the tracks" [136 Ohio St. 159, 24 N.E.2d 600] he would have known of the existence of the approaching train. In Lang, Adm'x v. Pennsylvania R. R. Co., supra, the Court spoke as follows: "The rule that such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby, must necessarily comprehend looking and listening at the last time and place where a traveler could stop the conveyance in which he is riding and avoid a collision between the same and a train or trains being operated on such railway track or tracks. The omission so to do, without a reasonable excuse therefor, is negligence and will defeat an action by such person or his administrator for an injury to which such negligence contributes." [59 Ohio App. 345, 18 N.E.2d 274.]

■ Plaintiff's chief contention seems to be that in order to obtain an unobstructed view of the track to the right he would have had to look somewhat backward at an angle of 130 degrees, and that the presence of his friend in the seat to his right prevented him from doing this and from seeing more than 350 feet down the track. He admits that he could have seen much farther if he had turned around and looked backward. We find nothing in the Rohrs case, or in the other Ohio authorities above referred to, which says that a traveler approaching the railroad crossing is not required to look upon entering a crossing at

an angle more than the usual 90 degrees. They hold that the looking must be such as will make it effective. If the angle of the crossing is such as to require the traveler to turn to his side and rear 130 degrees to make his looking effective, we believe it is his duty to turn and look at the necessary angle. Nor is the driver excused from doing this because the presence of a passenger in the seat to his right makes it difficult to do so. The Ohio law seems well settled that where the danger at a railroad crossing is increased by conditions obstructing the vision, greater care and caution are imposed upon one about to pass over such crossing. Woodworth v. New York Central R. Co., 139 Ohio St. 543, 552, 80 N.E.2d 142; Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 165, 24 N.E.2d 597; Baltimore & O. Ry. Co. v. McClellan, Adm'x, 69 Ohio St. 142, 157, 159, 68 N.E. 816; Pennsylvania Co. v. Morel, 40 Ohio St. 338.

The failure of the defendant to maintain a watchman at the crossing after 1:00 a.m. has no material bearing on the issue of contributory negligence. The plaintiff stopped at the crossing and waited even though no watchman was there. He testified that he always stopped for a crossing for his own safety regardless of whether it had a watchman. His position in this case is not that the absence of a watchman induced him to cross without looking, but that he stopped and looked and didn't see the train.

Defendant's motion will be sustained and judgment entered for defendant.