DEVINE, APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.

(No. 5988—Decided June 30, 1941.)

*Mr. M. Froome Barbour* and *Mr. James E. Kimpel,* for appellee.
*Mr. John D. Ellis* and *Mr. J. B. Grause, Jr.,* for appellant.

Ross, J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county.

The action was brought by a boy eight years old, through his father and next friend, against the city of Cincinnati to recover damages for injuries received when the boy, coasting on one of the city streets, collided with a steel sign attached to a barricade placed by the city authorities on a hill to mark reservation of the street for coasting.

The plaintiff was not permitted to allege or prove at the trial, which resulted in a disagreement of the jury, that no cinders or other abrasive substance was placed upon the hill above the barricade.

The appellant city seeks to have this court enter the judgment, which, according to the claim of the city should have been rendered in its favor on its motion for an instructed verdict at the close of all the evidence.

The answer of the city admits that the street upon which the boy was coasting is a city street; that it was blocked off or barricaded as alleged in the amended petition; that the street was icy; and that the barricade consisted in the erection, at the top and bottom of the Paradrome street grade, of wooden horses, approximately eight feet wide, consisting of a wooden crosspiece connecting the two ends thereof, elevating the crosspiece above the surface of the street with a metal sign in the shape of a shield suspended downward from the crosspiece, upon which sign words were printed directing traffic off Paradrome street.

The record shows that the boy, eight years of age, lived in the neighborhood of Paradrome street and was familiar with the conditions prevailing thereon; that the city authorities placed barricades at each end of a city block, which was part way up a hill traversed by Paradrome street. As stated before, the plaintiff was not permitted to allege or prove that no ashes, cinders, sand, or other abrasive substance was placed above the lower barricade permitting the children coasting to stop their sleds upon the ice before reaching this barricade. The evidence indicates that most of the children were successful in directing their sleds out a side street. Some of them continued to coast past it for some considerable distance down the remaining portion of the hill. The lower barricade consisted of two wooden "horses," between which was suspended a plank, to which was attached a metal shield the bottom of which was not more than eighteen inches above the surface of the street. The street was approximately 25 feet wide. There was a space of five feet between either end of the barrier and the curbs of the street.

It appears that on the day in question, the boy, lying flat on his sled, started to coast down Paradrome street, which had been covered with snow for some time. The day before the snow had thawed. A drop in the temperature caused the water to freeze, so that the surface of the street was covered with ice. As the boy, coasting swiftly down Paradrome street, neared the barrier, he discovered it would be impossible to pass the barrier and proceed out a side street as other children occupied the left side of the street, to the left of the barrier, this being the side of the street down which he was coasting. The street had a high crown in the center, sloping toward either curb. The boy attempted to guide his sled across the street to the right side, was unsuccessful in this attempt, slid under the barrier and his face and head were severely injured by coming in contact with the metal shield suspended from the crosspiece of the barrier.

It is the contention of the city that these facts do not present any issue for determination by a jury. It is the contention of the plaintiff that they present an issue of fact as to whether the city was maintaining a nuisance in Paradrome street, and whether this nuisance was the proximate cause of the injuries suffered by the boy, and whether or not he was guilty of contributory negligence.

Certainly, it seems that the plaintiff should have been permitted to show that as a part of this situation, the city had failed to provide any means permitting one coasting down this steep hill to stop the movement of the sled before reaching the barrier, and that it was very likely that children would attempt to continue down the hill. The following appears in the record of plaintiff's testimony:

"Q.   Now, he also questioned you about seeing these barricades before, the barricades on Paradrome street, before the day you were injured. Will you tell the jury

at that time what was placed on the street in front of the barricade to stop the sleds?

"Mr. Grause: I object.

"The Court: The day before?

"Mr. Barbour: On the other occasions he has testified to having seen the barricades.

"The Court: He can answer that.

"Mr. Grause: Exception.

"Q. Tell the ladies and gentlemen of the jury what there was in the street in front of the barricade to stop the sleds?

"Mr. Grause: I object.

"The Court: I will sustain the objection.

"A. Ashes.

"Mr. Grause: I object and ask the court to instruct the jury to disregard that.

"The Court: The jury is instructed to disregard the last question and answer."

In addition to this, the following occurred at the trial when the plaintiff was testifying:

"Q. You remember that day, do you? A. Yes, sir.

"Q. What time of the day was it that you went over to Paradrome street to coast? A. About one-thirty or two o'clock.

"Q. Had you been coasting any other place before that? A. On the morning of that day I went over on Parkside and the police told us to go over to Paradrome.

"Mr. Grause: I object.

"The Court: We aren't concerned with that. The objection is sustained and the jury will disregard it."

In support of the defendant's contention that there was no evidence sustaining a cause of action against the city, the defendant relies upon the case of *City of Mingo Junction* v. *Sheline, Admx.*, 130 Ohio St., 34, 196 N. E., 897. That case is authority for the proposition that in the instant case the city in erecting the barriers was acting in its governmental function, and that if

there is any liability it must be predicated upon Section 3714, General Code, and particularly in that the city failed to keep Paradrome street "free from nuisance." If the defendant's contention is correct the trial court must then have been justified in finding as a matter of law that the barrier as located did not constitute a nuisance, and that there was no issue of fact in connection therewith for the consideration of the jury. At page 41 of the opinion, the court says:

"Even though the city were exercising a governmental function, still, under our decisions, including our holding in the second paragraph of the syllabus in the *Arbenz case, supra,* a municipality would become liable if it failed to keep the streets open and free from nuisance."

From the opinion, it would seem that the Supreme Court has held that, the erection of the barrier being involved in a governmental function, such barrier cannot be considered a nuisance. Such a rule, certainly, cannot be without exception. The barrier in question in this case, it is to be remembered, was erected, not at the bottom of a hill where the coasters could level off and stop, but part way up the incline. The hill extended downward beyond the barrier. From the evidence it is apparent that the barrier was erected when snow was upon the ground. It is a matter of common knowledge that a surface of snow permits a considerable control in guiding a coasting sled. However, this snow melted and thawed and then froze creating a surface of ice. Very little control over direction of a coasting sled is available on ice. This court held that the city in changeable weather is bound to anticipate the usual procedure of natural phenomena. *Christen* v. *City of Cincinnati,* 62 Ohio App., 528, 24 N. E. (2d), 717. And the city is bound to know that snow may melt, thaw, and turn to ice. Now consider the situation presented in this case—an icy hill; a barrier part way

down, under which a sled rider cannot proceed without injury; no ashes or abrasive substance to permit stopping (the trial court refused this allegation and proof); an eight-year-old boy starting at the top of the hill, relying upon the implied representation of the city that no situation will be presented which will be likely to cause him injury; one side of the barrier blocked; an attempt to reach a place of safety; ice; and collision with a metal sign hanging eighteen inches above the level of the icy street.

Certainly, a question is here presented for a jury—whether such a situation presented the existence of a nuisance—which should have been submitted to a jury.

It is agreed that the mere setting aside of the street for coasting could not create a nuisance, and the erection of the barrier in itself could not create a nuisance; but can any court say that placing a barrier part way down a hill, with a narrow margin on either side to the curbs, with no provision for stopping upon ice, would not present a jury question? If the answer to this query is "Yes," then any barrier constituting an obvious trap to pedestrians or travelers upon the road would be justifiable. This cannot be the law.

The judgment of the trial court in refusing to instruct a verdict for the defendant was correct, and the case is remanded for further proceedings in accordance with law.

*Judgment reversed and cause remanded.*

MATTHEWS, P. J., and HAMILTON, J., concur.