## CAROLINA, C. & O. RY. CO. v. STROUP.

(Circuit Court of Appeals, Sixth Circuit.   February 6, 1917.)

No. 2899.

1. MASTER AND SERVANT ⊚═286(33)—INJURIES TO SERVANT—JURY QUESTION.
    In an action by a brakeman for injuries received while attempting to cut some cars of a train from the rest, the question of the negligence of the engineer in failing to set the brakes on the rear cars, which the brakeman contended pressed down and injured him, *held*, under the evidence, for the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020; Dec. Dig. ⊚═286(33).]

2. TRIAL ⊚═139(1)—JURY QUESTION—CONFLICTING EVIDENCE.
    Where, under the evidence, reasonable men may honestly draw different conclusions, the question is one for the jury.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341; Dec. Dig. ⊚═139(1).]

3. TRIAL ⊚═178—PROVINCE OF COURT AND JURY—DIRECTED VERDICT.
    On defendant's motion to direct a verdict, it is the duty of the trial court to take that view of the evidence most favorable to plaintiff.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. ⊚═178.]

4. APPEAL AND ERROR ⊚═997(3)—REVIEW—DENIAL OF MOTION FOR NEW TRIAL.
    In reviewing the trial court's denial of a motion for a new trial, the fact that he had seen and heard the witnesses should be considered in support of his action.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2024; Dec. Dig. ⊚═997(3).]

5. APPEAL AND ERROR ⊚═995—REVIEW—VERDICT.
    An appellate court cannot weigh the evidence with a view of determining whether it is sufficient to sustain a verdict.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3907; Dec. Dig. ⊚═995.]

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. APPEAL AND ERROR ☜⇒928(2)—REVIEW—PRESUMPTIONS.

Where defendant did not complain of the charge given, there is a presumption that the instructions were as favorable to defendant as the case warranted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3750; Dec. Dig. ☜⇒928(2).]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by George W. Stroup, by next friend, Mary Stroup, against the Carolina, Clinchfield & Ohio Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

J. R. Simmonds, of Johnson City, Tenn., for plaintiff in error.
Robert Burrow, of Bristol, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was an action to recover damages for personal injuries sustained through alleged negligence of the railway company. The action was brought and concededly was maintainable under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]); and the plaintiff below recovered verdict and judgment for $2,500. The evidence is embodied in the record, though the court's charge to the jury is not. At the close of all the evidence the railroad presented motion to direct a verdict in its favor; this motion and also a motion for new trial were denied. The railroad prosecutes error. The only question presented here is whether the verdict can be sustained upon the evidence.

The plaintiff below, Stroup, was a brakeman on a freight train of 80 cars, and the injury occurred in the railroad yard at Bostick, N. C. Stroup had been previously told to cut 18 cars out of the forward portion of the train upon reaching Bostick, and to take them from track No. 2, on which the train would enter the yard, and set them on track No. 1. These two tracks were maintained along north and south adjacent lines, track No. 1 lying on the west of track No. 2. The switch connection led from track 2 northwardly into track 1 and was quite a distance south of the point at which the train was to enter the yard; this required the train partially to pass the switch point before the cars to be cut out could be conveniently released from the train and backed into track No. 1.

The train entered the yard from the north on track 2 about 4 o'clock in the morning of December 2, 1914, and continued southwardly until the eighteenth car reached the clearing post, which stood between the tracks and some 200 feet north of the point of the switch leading northwardly, as stated, into track 1. Admittedly, the execution of Stroup's order required him to go between the ends of the eighteenth and nineteenth cars to separate the air hose; and Stroup testified that before reaching Bostick he advised the engineer of the order to cut out

the 18 cars. While the train was approaching the place designed to carry out the order and moving slowly, Stroup, with his lantern, signaled the engineer to stop. The engineer cut off the steam, but seemingly failed to apply the brakes. Stroup says, however, that the train stopped—"at least the 18 cars had stopped"; that he stepped between the eighteenth and nineteenth cars to part the hose, and turned the angle cock on the car nearest to the engine; that he "was fixing to turn the one on the other car when the cars (that is, the rear cars) began to move ahead; * * * the rear part of the train moved up on me and caught me." It is here that the issue of fact arises.

The railroad contends that under the existing physical conditions, if the front portion of the train, comprising 18 cars, had in truth stopped, the rear portion could not have "moved up" and "caught" Stroup —in other words, that in view of the grade of the track the theory of stoppage of the front portion of the train and continued movement of the rear portion is opposed to the law of gravity—and hence that Stroup must have gone between the cars while the train was in motion, and in violation of a rule of the company with which he was admittedly familiar. Evidently, then, the grade of the track and the potential slack in the rear portion of the train form the basis of the controversy. The negligence alleged in the declaration is that the engineer stopped the train "on a dip in the road, without applying the air brakes on said train, by reason whereof said train, moving by gravity, started while plaintiff was between two cars and before he could extricate himself from his dangerous position was caught and crushed," etc. Among other features of Stroup's testimony this appears in respect of the alleged "dip" in the track:

"If a car is turned loose without brakes on and left to gravity at 'B' (meaning the clearing post before mentioned between tracks No. 2 and No. 1, and the point where the accident occurred), it will roll to the center of the track there; a car will drop back there in the direction from which we came, that is, north. Q. If that is true, what was it, or why, I will ask you, why was it these 62 cars back on this end dropped in toward you and caught you? Why would they drop in that direction? A. We pulled in there, and the slack, I guess it was, out there in those rear cars, and it shoved up. The way that track is elevated there would make them drop this way; the rear portion of the 62 cars would be on this curve back there, high up on the curve, so as to press down toward the clear post."

The locomotive engineer, called by the company, testified that he "stopped the whole train; to stop shut off the steam, and the brakes were partially applied by the pressure retaining valves"; and, further:

"If cars are left on a grade with retainers on, it may leak out, and the car start. I can tell from the engine whether or not the retainers are on."

The company introduced a profile of track No. 2, as to which the company's civil engineer stated:

"The vertical scale of the blueprint is in feet; it is ten times as small in the lineal direction as it is in the vertical direction."

It is insisted in Stroup's behalf that the profile is misleading. The complaint in substance is that its lineal scale is too much reduced to give an adequate understanding of admitted variations in the grade of

the track; but, assuming the profile to be technically correct, it differs in some important features from the testimony of the civil engineer, while it does not in material respects contradict the testimony of Stroup. Otherwise stated, the profile discloses a depression in the grade of the track within the limits of the train, and of course opposing grades toward the ends of the train. It is not necessary to dwell on the distances given by the engineer between points indicated on the profile, nor upon the lengths given by Stroup of the cars, nor upon his statement of the distances between the cars as they were placed and operated, in the rear portion of the train. Enough is shown to point out the nature of the controversy and the difficulty of its solution. In denying the motion for a new trial, Judge Sanford in part stated his reasons for overruling the company's motion to direct a verdict:

"The undisputed physical facts did not, in my opinion, necessarily require a verdict to be directed for the defendant. While it appears that the engineer shut off steam while his engine was on an ascending grade and the engine stopped, and the nature of the tracks and grade were such that many of the succeeding cars would also have stopped, it is not impossible or improbable that after the cars in the front of the train had stopped back of the eighteenth car, the cars at the rear of the train would be still in motion and in part apparently on a descending grade, and that the subsequent forward motion of these cars, not arrested by brakes, through the shock transmitted from car to car, finally gave an impact which caused the car to move forward in front of which plaintiff had stopped, resulting in the accident. The question whether, under all the circumstances, there was negligence in not putting on the brakes so as to stop each car and prevent such taking up of the slack was, in my opinion, one for the jury. * * *

"And while my view as expressed or suggested at the trial was in favor of the defendant, on reflection I am of opinion that I did not then give sufficient weight in my own mind to the probable continued forward movement of the rear end of the train, and on the whole, after careful consideration, I have concluded that the verdict of the jury, importing a finding of negligence on the part of the defendant, is not so clearly against the evidence or the decided weight of the evidence as to require it to be set aside. Furthermore, in so far as the plaintiff's own conduct in going in between the cars under the circumstances with the knowledge that the brakes had not been shut off, constituted contributory negligence, this was apparently taken into consideration by the jury in a substantial reduction of the plaintiff's damages."

[1, 2] We observe the contention of counsel that the trial judge apparently reversed the order in which slack in a moving train is taken up; but this criticism fails to notice that the eighteenth and nineteenth cars, and perhaps some other adjacent cars, were on an ascending grade when Stroup was injured, and so the slack in that portion of the train might not have been and probably was not taken up when the effect of the impact of the oncoming cars from the rear, which in substantial portion were apparently on a descending grade, reached the place of the injury. Certainly upon all the evidence pertinent to this feature of the controversy reasonable men might honestly have drawn different conclusions, and this is the settled token for submission of a cause to the jury. Marbury v. Illinois Cent. R. Co., 176 Fed. 9, 15, 16, 99 C. C. A. 483 (C. C. A. 6). And see Cincinnati, N. O. & T. P. Ry. Co. v. Jones, 192 Fed. 769, 773, 113 C. C. A. 55, 47 L. R. A. (N. S.) 483, and citations (C. C. A. 6).

[3-5] Moreover, while it is perhaps sufficient to restate the established rule that in disposing of defendant's motion to direct, it was the duty of the trial court to take that view of the evidence which was most favorable to the plaintiff, yet it may be added that since the judge was entitled to weigh the evidence when passing on the motion for a new trial, the fact that he had seen and heard the witnesses is to be considered in connection with his opinion denying that motion. Meers v. Childers, 228 Fed. 641, 642, 143 C. C. A. 162. Further, an appellate court cannot weigh the evidence with a view of determining whether it is sufficient to sustain a verdict. Toledo, St. L. & W. R. Co. v. Howe 191 Fed. 776, 780, 112 C. C. A. 262, and citations (C. C. A. 6).

[6] We are the more content thus to dispose of the case because of the company's failure either to complain of the charge of the court or to include it in the record; for such an omission gives rise to a presumption that the court instructed the jury as favorably for the defendant as the merits of the defense deserved. Leonard-Martin Const. Co. v. Highbarger, 175 Fed. 340, 341, 344, 99 C. C. A. 128 (C. C. A. 6).

The judgment will be affirmed, with costs.

---

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes