Kinkade, J.
 

 John H. Moses brought an action in the court of common pleas of Darke county against the Pennsylvania Eailroad Company to recover damages sustained by reason of a collision between a train owned and operated by the railroad company and an automobile in which Moses and his wife were riding. The accident occurred at the intersection of Central avenue and the railroad tracks in the city of Green-ville. The crossing was at grade. The automobile was being driven in a northerly direction on Central avenue and the train was traveling in an easterly direction. The collision resulted in the complete destruction of the automobile owned by Moses and caused very serious and permanent injuries to his person. His action sought to recover damages in the amount of $3,000. He alleged that he was driving his car with care and caution at the time, and that the railroad train was being operated at a high and danger
 
 *622
 
 ous rate of speed, exceeding forty miles per hour, and was violating an ordinance of the city of Greenville which made it unlawful for a train to be traveling through that city in excess of eight miles an hour. He alleged that as the train approached the crossing it failed to give any signal by bell or whistle. He averred that there were flasher light signals, one on the north side of the railroad track and the other on the south side; that these lights were established by the railroad company for the purpose of warning travelers upon the highway of the approach of trains; that the railroad company had carelessly and negligently omitted to keep these lights in repair, and that the lights were not operating at the time of the approach of the train in question; that by reason of the failure of the flasher lights to operate he was led to believe that no train was approaching. Parallel to the main track on which the train was traveling and 27 feet to the south of the main track was a side track operated by the railroad company. There was no train or cars upon the side track at the time of the injury.
 

 Moses averred that he was traveling at a very low and cautious rate of speed, that the view of the crossing to the west was so obstructed as that he was unable to see the approach of the train, and that he was injured by reason of the negligent action of the railroad company as aforesaid.
 

 The railroad company denied all acts of negligence, and alleged that the collision was caused by the negligence of Moses.
 

 At the close of the plaintiff’s case in chief, and again at the close of all the evidence, the railroad company moved the trial court to withdraw the case from the jury and direct a verdict in favor of the defendant. These motions when made were overruled, and exceptions noted. The jury returned a verdict of $2,500 in favor of Moses. Motion for new trial on various
 
 *623
 
 grounds assigned was overruled and judgment entered On the verdict. The Court of Appeals affirmed this judgment and error is prosecuted here by the railroad company.
 

 The evidence was in dispute as to whether the flasher light signals were operating or the statutory signals were given, and also in dispute as to the rate of speed at which the train was moving.
 

 The Court of Appeals in its opinion, when discussing the weight of the evidence, said:
 

 “There were two of these signs at the crossing, one on the north side of the railroad tracks to warn persons who approach the crossing from the north; the other on the south side to warn persons approaching from that side. Some of the testimony offered by the plaintiff in error in the trial related to the lights upon the north side of the railroad. We are not advised by the testimony that these lights were so constructed that if one light was burning there would be a necessary inference that the other lights at the crossing were also burning. We are
 
 therefore
 
 of opinion that the testimony that the north lights were burning is
 
 no
 
 evidence that the south lights were also burning. * * * We have
 
 therefore
 
 reached the conclusion, although not without some doubt, that the judgment is not contrary to the weight of the evidence upon the issue as to whether the flasher lights on the south side were burning.”
 

 It is difficult to understand the foregoing statement of the Court of Appeals, in view of the fact that there was positive evidence, uncontradicted, that these signals were on the unit system, and the fact that the lights on the north side were operating must have raised a strong inference that the south lights were operating at the time of the accident.
 

 We quote briefly from the evidence in the record:
 

 “Q. So that we don’t misunderstand it I will repeat
 
 *624
 
 it. They are supposed to operate two lights on both sides of the track, north and south sides, in Greenville? A. Yes.
 

 “Q. And the same system controls all the crossing lights in Greenville, doesn’t it? A. The same system.
 

 “Q. The same circuit? A. No, not the same circuit.
 

 “Q. *
 
 *'
 
 * Where does the circuit for the Central avenue crossing lights begin to the west? A. Well, approximately 3000 feet west, I would say. # # *
 

 “Q. The system is operated by batteries, is it? A. They are operated with electric current.
 

 “Q. You get it from the city, do you? A. No, sir, we have our own power and storage battery for reserve.
 

 “Q. Well, then, every time a train would cause the light at Central avenue to flash it should also cause the Sweitzer street light to flash? A. Providing where the train was.
 
 * * *
 

 “Q. There are two flasher light signals at Central avenue crossing, are there not? A. One on each side.
 

 “Q. I wish you would state to the jury whether or not these two signals at. Central avenue crossing operate on the same circuit? A. On the same circuit through the same relay.
 

 “Q. Prom the same relay? A. Yes.”
 

 This is common information, generally known in respect to all such signal lights on railroad crossings of highways. No reasonable explanation can be offered why the signals should not be on the unit system. The fact is, and that is common knowledge, the signals are set in motion by the trains when a moving car or engine reaches a certain district in which the lights are located. If the train stops in the light zone, the lights do not stop flashing. If there is an accident there, the lights do not stop so long as any operation of the train is within the light zone. The train trucks make the
 
 *625
 
 electrical connection complete, so as to set the flasher signals in operation.
 

 There is no dispute about the fact that the lights on the north side of the main track of the railroad were flashing at the time of the collision.
 

 There were but two people in the automobile, Moses and his wife. They both testified that they were familiar with this crossing, and knew it to be a dangerous crossing. Moses testified that as he approached the side track, which is 27 feet south of the main track, be was driving about five miles per hour. The accident occurred in broad daylight, between 11 o’clock and noon. Moses testified positively that while his car was moving not to exceed five miles an hour, he partially leaned over the steering wheel and looked both ways for the approach of a train. His wife supported him in that statement. He said that his wife remarked, “Everything is clear.” We quote from the evidence of Moses:
 

 ‘ ‘ Q. Did you or did you not know of the existence of the crossing of the Pennsylvania tracks on Central avenue in this city? A. Yes. I had crossed it several times. * * *
 

 “Q. Yes. Whether or not you knew that that crossing was protected by a flash light signal? A. Yes, I knew it was a dangerous crossing.
 

 “Q. Yes. A. But I never drove up as careful to a crossing in my life as I did this one. * * *
 

 “Q. What do you say as to whether or not you looked? A. I sure looked and listened.
 

 “Q. Did you look in both directions or just one? A. I looked in both directions. I drove up there so slow. When my wife says everything is in the clear — of course, I was going so slow by the time I got on to that railroad track that fast train coming from the west— I was going so slow I couldn’t get off, or I couldn’t get
 
 *626
 
 back. It all happened just that quick. (Witness snaps finger indicating time.) * * *
 

 “Q. Where was the locomotive when you first discovered it? A. I guess it was as far as me to that door over yonder. Just about that close, I judge. * * *
 

 “Q. Tell the jury whether or not that flasher light was operating? A. No, sir. * * * I wouldn’t have got hit anyhow if I would have been reckless and rushed across there; being so careful I got hit. * * *
 

 “Q. * * * I am asking — in your best judgment did you increase your speed of your automobile? A. No, sir.
 

 “Q. You continued to approach the main track of that crossing after you had looked and listened and didn’t hear a train and didn’t see a train — you approached the main track at about the same rate of speed? A. I don’t suppose I had increased very much.
 

 “Q.
 
 *
 
 * * How far were you south of the main track when you first saw the train? A. I wasn’t south of it; I was right on the track.
 

 “Q. You were right on the main track when you first saw the train? A. Yes.
 
 * * *
 

 “Q. You say you didn’t see the train until your automobile was at the main track. How far was the engine west of your automobile when you first saw it; I mean when you looked up and saw that train? How far was the engine away from you? A. Well, as I said a while ago I judge something near — as far as from here to the door yonder. * * *
 

 “Q. How many feet? A. I judge about forty.
 

 “Q. Then when your automobile had reached the main track the engine was 40 feet away? A. I judge something like that.
 

 “Q. What did you do then? A.. What could I do? Just grabbed my steering wheel and it was all over. That is all I could do. I knowed there was no show in God’s world. I couldn’t get across.
 

 
 *627
 
 “Q. Did you try? A. Try, the devil; what was the use to try, the speed at which it was going. No use.
 

 “Q. How fast was the train going? A. I don’t know. I didn’t have any speedometer on it. I judge fifty miles per hour the way that it knocked my car and knocked me over. It couldn’t possibly have been going much less than that. ’ ’
 

 Mrs. Moses corroborated her husband’s testimony as to the speed of the automobile, saying:
 

 “It was moving very slow. I don’t remember just exactly, but I know it was very slow. I know I repeated to him I said, ‘We are in the clear,’ and just as we pulled upon the track ‘cabang’ the train hit us.”
 

 As bearing upon the speed of the train, the uncontradicted evidence in the record is that the regular stop for that train was but three blocks east of the point where the collision took place.
 

 A plat drawn by a civil engineer was offered and received in evidence in the case, and there was no evidence tending to show that it was inaccurate. The plat and the testimony given in support of it showed that from the side track, 27 feet south of the main track, there was a clear view to the west of not less than 500 feet. There was nothing to obstruct this view while passing between the side track and the main track.
 

 The positive testimony of Moses that he was not south of the track when he discovered the engine, but was on the main track, and that the engine was only 40 feet away from him when he first discovered its approach, completely negatives his other statements, that he looked in both directions at the side track and as he was going onto the main track. When there is evidence in the record, not disputed, which establishes that the injured party was guilty of negligence proximately contributing to his injury as a matter of law, it then became the duty of the trial court to withdraw the case from the jury and to direct a verdict for the defendant;
 
 *628
 
 and it also became tbe duty of tbe Court of Appeals to reverse tbe judgment of tbe trial court.
 

 A majority of this court is of tbe opinion that tbe evidence of Moses bimself clearly and unmistakably shows that be was guilty of negligence directly and proximately contributing to bis injury as a matter of law.
 

 We bave considered all tbe other assigned errors presented by tbe plaintiff in error, but do not find any of them of sufficient merit to justify a reversal of tbe judgment.
 

 Tbe judgment of tbe Court of Appeals will be reversed, and final judgment will be entered here in favor of tbe railroad company, as it should bave been in tbe trial court.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Marshall, C. J., Jones, Day and Allen, JJ., concur.