### CHRISTEN v CINCINNATI (city)

Ohio Appeals, 1st Dist, Hamilton Co

No 5493. Decided April 3, 1939

Ratterman, Copwell & Fletcher, Cincinnati and Israel J. Horwitz, Cincinnati, for appellee.

John D. Ellis, Cincinnati and J. B. Grause, Jr., Cincinnati, for appellant.

## OPINION

By ROSS, J.

Appeal on questions of law from the Court of Common Pleas of Hamilton County, Ohio.

Cross appeals were filed.

The plaintiff appeals against the granting of a new trial by the trial court. The defendant appeals on the ground that the trial court should have instructed a verdict for the defendant. On plaintiff's appeal, we find no final order to have been entered by the trial court, and dismiss the appeal of plaintiff. Hoffman v Knollman, 135 Oh St 170. Martinka v Cleveland Ry. Co., 133 Oh St 359.

Under the holding in Cincinnati Goodwill Industries - Neuerman, 130 Oh St 3?4, we proceed to consider the claim of the defendant that it was and is entitled to judgment as a matter of law.

Judgment in the trial court was in favor of the plaintiff against the city permitting plaintiff to recover $4,000 by way of damages suffered by her when she fell on an icy sidewalk in the City of Cincinnati.

In view of certain decisions of the Supreme Court, which we will discuss later, the particular language used in the petition becomes of paramount importance, and for the sake of accuracy, we quote the exact language:

"Plaintiff says that the defendant is a municipal corporation duly organized under the laws of the State of Ohio.

Plaintiff further says that on the 22nd day of February, 1936, and for many months prior thereto the sidewalk of Homer Avenue in said City at 4315, which was a much used sidewalk, was allowed by the defendant to become and had become out of repair and dangerous to pedestrians in this, to-wit:

The sidewalk was of concrete construction and blocked off into large square blocks and one of said blocks had sunk below the adjoining block from one to three inches causing water to accumulate in the space caused by the sinking of said block; that on the 22nd day of February, above mentioned, the space caused by the sinking of said block had filled with water, which had frozen, forming a cake of ice where the concrete sidewalk should have been; that on the morning of February 22nd, at the time plaintiff fell, said cake of

ice and the sidewalk was covered with a thin layer of snow thereby concealing from pedestrians using said sidewalk the ice caused by said sidewalk being out of repair, and gave the sidewalk the appearance of being one safe solid sidewalk with all the blocks even and level.

Plaintiff further says that at the time above stated, to-wit: on the 22nd day of February, 1936, at about eight o'clock in the morning she slipped on the ice concealed under the snow caused by the sidewalk being out of repair and broke her left hip and immediately thereafter she was taken to the City Hospital * * * ”

Further allegations of the petition deal with the nature and extent of her injuries.

The answer was in effect a general denial coupled with a charge of contributory negligence.

The plaintiff replied denying such contributory negligence.

The evidence produced at the trial developed that the plaintiff had lived for about sixteen years only a short distance, only a few ‘doors” from the point on the same street on which she was injured. On the morning of February 22nd, 1936, she had occasion to walk to a point where she could take a street car. The nearest and best route for the purpose took her on that portion of the sidewalk upon which she fell. She states in her testimony:

“Q. Now going down Homer Avenue just tell the jury what happened to you?

A. Well, I walked along down Homer Avenue and when I got in front of 4315 Homer Avenue, I looked at the walk, I knew this hole was there, and the sidewalk all appeared level to me and it was covered with snow. Where I got to where the hole was I found myself falling backwards. I got up and fell down again, got half way up and fell down again. I looked up and down the street. There wasn't anybody in sight, then I kind of crawled up trying to get home. I was just about three or four feet from the place I fell when I saw somebody at the garage doors and called for help.

Q. You had seen this sidewalk before this morning?

(Objection by counsel for defendant and the objection was sustained).

Q. Had you seen that sidewalk before this morning, before the morning you fell?

A. Did I see it before I fell; yes.

Q. Before that morning?

A. No, I didn't. Do you mean did I go out that morning? I don't know just what you mean.

Q. How long have you been using that sidewalk?

A. For sixteen years.

Q. Tell the jury whether or not the sidewalk had been in good condition before you fell?

A. It has not been for years.

Q. What was the matter? What was the trouble?

A. It stood full of water all the time. Whenever it rained the water was there, there was mud there, and the water was over the filling that whole hole and a good stretch of it too. The water was pretty deep, and a lot of times people had to go way up or go way down past that sidewalk in order to get to the street car or any place else.

Q. When you walked along there that morning did you see any hole there that morning or anything?

A. No, I didn't.

Q. Why didn't you see it?

A. Well, it was all level.

(Objection by counsel for the defendant and the objection was sustained).

Q. What did you see there?

A. I saw snow.

Q. What was under the snow—if you knew?

(Objection by counsel for defendant).

MR. COWELL: I am asking what was under the snow.

MR. GRAUSE: All right.

Q. Go on and answer the question.

A. Under the snow was filled with ice. Naturally there was ice there.

Q. When did you find that out?

A. When I fell. I couldn't balance myself. I fell just back and hit my hip just as hard. I tried to get up and fell down again. I couldn't straighten myself out at all."

There was also evidence that the portion of the sidewalk had been in a state of disrepair for a number of years, that a depression in the sidewalk some four of five feet wide was caused by the sinking of a block of the cement forming the surface of the walk, that this depression from time to time filled with water, snow and ice, that the abutting owners had made little gutters to drain off the water; that the City of Cincinnati had constructive notice of the condition of this sidewalk is clearly shown by the evidence. That the City had no notice, constructive of otherwise, of the formation of ice is equally clear. It is also just as apparent that the plaintiff had full knowledge of the defect in the sidewalk.

The claim for damages in this case is predicated upon the failure of the City to perform its statutory duty to keep the sidewalk in repair. The plaintiff also predicates her right to recover upon the basis that such failure was the proximate cause of her injury. The action is not based upon the failure of the City to remove the ice and snow.

The City asserts that the cases of **Village of Leipsic v Gerdeman, 68 Oh St 1,** and **City of Norwalk v Tuttle, 73 Oh St 242,** furnish a basis for non suit of the plaintiff, upon the theory that the City had no constructive notice of the defect causing injury to plaintiff. In both of these cases the petitions were so drawn that the court was justified in concluding that the predicate for recovery was the existence of ice and snow, of which the municipality had no knowledge, rather than the defect in the sidewalk, of which the municipality must have had notice. As pointed out in the instant case, the predicate for liability is the failure of the City to remedy a defect which in co-operation with natural causes produced the foreseeable results reasonably to be expected and anticipated by the City.

We agree with Judge Washburn in distinguishing this type of case from those considered by the Supreme Court. **Elyria v Williams, 13 Abs 404.**

The jury were therefore justified in concluding that the failure of the City to remove a defect in the sidewalk was the proximate cause of the injury to plaintiff. It is a matter of common knowledge that water seeks its level, will fill a depression, that it may be expected in this climate in the month of February that the temperature will suddenly drop below the freezing point, that the water in the depression will freeze, and that snow will fall and cover the ice. The sequence of these phenomena is too often observed to be classed as beyond the scope of what is reasonably to be anticipated. The relation between the defect and the injury is as direct as that considered in the famous squib case, Scott v Shepard, 2 W. Bl. 892, 22 R. C. L., 136.

We consider, therefore, that upon the issue of negligence the case was properly submitted to the jury.

The City, however, maintains that the evidence conclusively shows that the plaintiff was guilty of contributory negligence as a matter of law. This simply means, that its claim is that reasonable minds could not differ as to this conclusion. We are confronted with the conclusion of twelve jurors, that the plaintiff was not guilty of contributory negligence, and under a charge which presented to the jury the responsibility of the plaintiff under the circumstances.

There were circumstances which prevented the plaintiff from knowing the exact spot where the depression was located. The entire surface of the sidewalk was covered with a light fall of snow. We cannot find that the plaintiff was chargeable as a matter of law with contributory negligence, or that the evidence was such as to preclude the plaintiff from submitting this question to a jury.

We, therefore, conclude that the appeal of the plaintiff must be dismissed, under the holding in **Hoffman v Knollman,** 135 **Oh St 170,** and that the action of the trial court in granting a new trial will not be disturbed in view of the fact that upon the record the defendant was not entitled to judgment by instruction or non obstante veredicto.

HAMILTON, PJ and MATTHEWS, J, concur.