## HIGHFILL v. LOUISVILLE & NASHVILLE R. CO.

No. 10135.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1946.

Walter P. Armstrong, of Memphis, Tenn. (James W. Van Dyke, of Paris, Tenn., and Walter P. Armstrong, of Memphis, Tenn., on the brief), for appellant.

Clarence Clifton, of Memphis, Tenn. (Henry J. Livingston and Clarence Clifton, both of Memphis, Tenn., on the brief), for appellee.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

In this action for damages for death by wrongful act brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by the administratrix of the intestate against the appellee railroad company, an interstate carrier, the District Court directed a verdict for the defendant. The decedent was a boilermaker whose duties embraced the servicing, between runs, of engines of the railroad company. Concededly, a large portion of his duties affected and were in furtherance of interstate commerce.

The basis of the cause of action was rested upon the failure of the interstate carrier to exercise the reasonable care required by the federal statute to furnish the fatally injured employee a safe place in which to work. The hypothesis presented by the plaintiff administratrix below was that, while in the performance of his duties, her decedent sustained the injuries from which he died by slipping and falling in grease and lubricating oil whch had accumulated on the engineer's deck of the engine, in consequence of the negligence of an employee of the railroad company.

The record discloses that the lubricator was customarily drained at the cinder pit before the engine was brought to the roundhouse; though, on rush jobs, this draining was done at the roundhouse. There was testimony from which a reasonable inference could be drawn that, in the process of draining the lubricator, oil might run from the drainpipe, or might overflow the bucket and flow upon the engineer's deck. To avoid this, cotton waste was furnished the tool and can man for the purpose of cleaning the deck of oil. Certain witnesses testified that they had ob-

served grease or oil on the engineer's deck, when they examined it several hours after the death of decedent. Decedent's helper, who was standing in front of him in the engineer's cab, testified that he heard a noise and, looking around, saw the decedent lying with one foot on the engineer's deck and the other foot between the step to that deck and the tender deck below, and with his head on the coal-guard of the tender deck.

There was reasonable ground for an inference that grease or oil was on the deck at the time decedent slipped and fell. This inference was strengthened by the autoptic proference of decedent's shoes, upon the soles and edges of which was observed, according to testimony introduced, lubricating oil of the same type as that used in the lubricator.

Upon this evidence, the jury was the appropriate tribunal to determine the issues of fact. As was said in Bailey, Administratrix v. Central Vermont Railway, Inc., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, with respect to the remedy afforded railroad workers under the Employers' Liability Act: "To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."

In another action brought under the Federal Employers' Liability Act, the Supreme Court pointed out that the jury, not the court, being the fact-finding body, the jury's function is in essence "to select from among conflicting inferences and conclusions that which it considers most reasonable." The opinion writer said, moreover: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences." Tennant, Administratrix v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520.

On the direct authority of the opinion of the Supreme Court in Lavender, Administrator v. Kurn et al., Trustees, 66 S.Ct. 740, 743, decided March 25, 1946, after the date of the trial below, the District Court clearly committed reversible error in directing a verdict in the case at bar. In the Lavender case, the Supreme Court of the United States reversed the judgment of the Supreme Court of Missouri, where, in an action under the Federal Employers' Liability Act, a jury verdict in favor of a decedent employee had been set aside and a new trial awarded by the State Supreme Court. A comparison of the circumstances of that case with the facts of the instant controversy impels the conclusion that a greater degree of conjecture would be there required to sustain liability than would be true in the case at bar.

In the Lavender case, the decedent was employed as a switch tender by the Illinois Central Railroad Company. His duties included throwing switches for the Frisco Railroad, also. He met his death while in the performance of his duties; and, according to medical testimony, his death was due to a fracture of the skull by "some fast moving small round object." The negligence charged by his administrator in an action against the carriers was that the Frisco permitted a mail hook or other object to extend out from the side of one of its backing trains; and that the Illinois Central was negligent in failing to exercise reasonable care to provide him with a safe place in which to work, the surrounding ground being high and uneven and the light insufficient and inadequate. There was evidence tending to show that it would have been physically and mathematically impossible for the mail hook which the plaintiff contended struck his intestate in the back of the head to have done so; and there were facts from which it might be reasonably inferred that he had been murdered. Though he fell forward toward the Frisco track in such manner that when his body was found his head was five and a half feet north of the rail, and other circumstances shown negatived the hypothesis that he had been struck by the mail hook, the Supreme Court considered that the inference that he was "killed by the hook cannot be said to be unsupported by probative facts or to be so unreasonable as to warrant taking the case from the jury." The opinion pointed out that the "evidence indicated that when the mail car swayed or moved around a curve the mail hook *might* pivot, its curled end swinging out as much as 12 to 14 inches." (Italics supplied.) This statement was made, despite the fact that there was no evidence that the mail hook was actually extended in position, and a foreman who had very carefully examined the train shortly after decedent was injured had stated that he had observed

nothing "sticking out" from the fireman's side of the train.

The Supreme Court held that there was sufficient evidence of negligence on the part of both railroads to justify the submission of the case to the jury and to require the appellate courts to abide its verdict. The opinion declared: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

The judgment of the District Court is reversed; and the case is remanded for a new trial.