## DETROIT, T. & I. R. CO. v. YELEY.
### No. 10471.

Circuit Court of Appeals, Sixth Circuit.

Dec. 22, 1947.

MARTIN, Circuit Judge, dissenting.

W. W. Keifer and H. S. Keifer, both of Springfield, Ohio (Keifer & Keifer, of Springfield, Ohio, on the brief), for appellant.

Frank Nevius, of Springfield, Ohio (Nevius & Nevius, of Springfield, Ohio, on the brief), for appellee.

Before HICKS, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Detroit, Toledo and Ironton Railroad Company, appeals from a judgment in the sum of $3,500 rendered against it in an action filed by the appellee, George D. Yeley, seeking damages resulting from an accident at a railroad crossing. Appellant complains of the refusal of the trial judge to direct a verdict in its favor, both at the close of the appellee's evidence and at the close of all the evidence in the case.

The petition, filed in the Court of Common Pleas of Clark County, Ohio, states that the accident occurred on July 14, 1943, at about 4:40 p. m. at the intersection of appellant's railroad tracks and Park Avenue in Springfield, Ohio, and that appellee's automobile, which the appellee was driving in a southwardly direction on Park Avenue, was hit by a freight train operated by the appellant and proceeding eastwardly into the city. The automobile was destroyed and severe injuries suffered by the appellee. The petition alleges that the appellant was negligent in operating the train without due regard for the rights of persons in the use of the highway; in operating the train without sounding the whistle or ringing the bell or giving any signal of its approach; in failing to exercise ordinary care to avoid striking the automobile of appellee; in failing to have its train under

376

control and to keep a lookout for the appellee; and in maintaining a large pile of earth along its right-of-way and so close to Park Avenue as to obscure the view of travelers using Park Avenue and approaching the railroad right-of-way; which negligence caused the accident and injuries complained of. Appellant denied the alleged negligence and pleaded contributory negligence on the part of the appellee. The questions presented are—(1) was the evidence sufficient to take the case to the jury on the issue of appellant's negligence, and (2) did the evidence on behalf of the appellee show contributory negligence on his part as a matter of law, so as to require the trial judge to direct a verdict for the appellant?

We find little difficulty with the first question. Although the evidence is contradictory with respect to the operation of the train at the time of the accident, yet the record contains substantial evidence on behalf of the appellee that the appellant was operating the train in a negligent manner and that this negligence was the proximate cause of the accident. The appellee testified that the train was traveling within the city limits at least 35 to 40 miles an hour, and a disinterested eye-witness named Dyer estimated its speed at around 30 miles an hour. The train continued on for about 500 feet before stopping after the accident. Three witnesses, the appellee, Dyer and another disinterested witness named Walker, testified that they did not hear any train whistle or ringing of the bell, although they were very close to the scene of the accident, and in a position to hear such signals. Section 8853 of the General Code of Ohio provides that when an engine is approaching a highway or a town crossing where the view of such crossing is obstructed the whistle should be sounded at a distance of not less than 80 and not farther than 100 rods from such crossing and the bell shall be rung continuously until the engine passes the crossing. There is nothing in the record to justify the rejection of the foregoing evidence from credible witnesses. Contradictory evidence from appellant's witnesses raised a clear jury question. The evidence

also showed that the area at the northwest corner of the intersection had been used as a city dump, resulting in the accumulation of a large pile of earth with accompanying weeds and grass. The record contains much evidence on behalf of the appellee to the effect that this pile of earth, arising to a height of approximately 8 feet at its peak, obstructed the view between the railroad track and an automobile going south on Park Avenue and that the appellant had permitted this obstruction with the uncut weeds and grass to encroach on part of its right-of-way in close proximity to its track in addition to its existence on the city property at the corner. Whether or not this earth and debris was partly on the right-of-way of appellant and whether or not it constituted an obstruction to a traveler's view of the right-of-way were questions of fact bearing on the issue of appellant's negligence for consideration by the jury. The trial judge properly instructed the jury that if it found that the dump, and the weeds and brush connected therewith, was not on the right-of-way of the appellant then it had no control over it and its employees were not required to take such things into consideration when approaching the crossing, but on the other hand if it extended over and upon appellant's right-of-way so as to form an obstruction to the view along the right-of-way to the west of a traveler traveling south on Park Avenue then its presence should have been taken into consideration by the employees of the railroad company operating the train, as under such circumstances the railroad company had control over it and should have had the obstruction to the view of the traveler on the highway removed. We believe the evidence justified the submission of the issue of negligence on the part of appellant to the jury.

On the issue of contributory negligence on the part of appellee the evidence was as follows: There was approximately 287 feet of straight track to the west of Park Avenue from which direction the train approached. There was approximately 250 additional feet of track further west and curving to the south to an overhead bridge. There was a slight up-

grade of approximately one percent from the bridge to Park Avenue. The appellee, 46 years of age, was working as a carpenter at the Ohio Steel Foundry, which was located north of and close to the intersection in question. He quit work at 4:30 p. m., went to his car in a parking lot just off of Park Avenue, pulled out into a line of cars going south on Park Avenue and proceeded a short distance to the intersection. It was a bright day and dry. He had worked at the Ohio Steel Foundry for about 60 days before the accident, had gone over the crossing back and forth every day he worked, and was very familiar with it. The automobile ahead of appellee crossed the track. Appellee testified that when he reached the intersection he stopped his car about 8 or 10 feet from the tracks, looked both ways and listened; that the car windows were down, and neither hearing nor seeing an approaching train he started across the intersection in second gear; that when he was in the middle of the track he discovered the train 3 feet from him to the west, and his car was immediately struck by it in the right front door. The automobile with the appellee in it was caught on the front of the engine and carried in that position about 500 feet eastward where the train was stopped. Appellee testified that the pile of earth on the northwest corner shut off his view to such an extent that he had to be almost on the track before he could see down the track to his right. Several other witnesses testified that a car would have to come close to the track, some 5 or 10 feet from it, in order to obtain a clear view of the track to the west. A witness, Thornburg, testified for the appellee, that a clear view of the track to the west could be obtained at a point 5 or 10 feet from it.

The case having been removed from the State court to the U. S. District Court on account of diversity of citizenship, is controlled by the Ohio law. The Ohio law places a duty upon a traveler upon a highway when approaching a steam railroad crossing to look and listen for the approach of trains before crossing, at a place and in a manner that will make the looking and listening effective. "The duty is definite, and is that he must look as well as listen, and that he must look from a point and at a time that will make the looking effective to apprise him whether danger is near or not." Detroit, T. & I. R. Co. v. Rohrs, 114 Ohio St. 493, 503, 151 N.E. 714, 717. Appellant relies upon that case in support of its contention. The facts in that case are very similar to the facts in the present case including the testimony of the automobile driver that as he approached the crossing he both listened for an approaching train and kept looking continuously in both directions for an approaching train, and that he did not see the locomotive until it was just ready to strike his automobile. The Supreme Court of Ohio said in that case "It is said that with this evidence the case must go to the jury to determine whether Rohrs did look and listen for the approach of trains from the south, and, if the jury find that he did look, then, even though he did not see, still he might recover. * * * Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did. To hold otherwise would simply be a manifest absurdity, and the doctrine that the traveler in a vehicle upon the highway when coming to a railroad grade crossing must look and listen, might as well be abandoned if one so placed, in broad daylight, can say that he looked in a given direction where there was a locomotive moving toward the crossing, and not farther than 75 feet away, and that he could not see it. * * * In view of the undisputed evidence in this case as to Rohrs' negligence, the trial court should have granted the motion to direct a verdict for the defendant." We believe that ruling is controlling in the present case. In both the Rohrs case and the present case there was an obstruction to the traveler's view of the railroad right-of-way when the traveler was a certain distance from the track. But as pointed out

in the Rohrs opinion, at a point closer to the track the obstruction to the view no longer existed. As observed in Moss v. Pennsylvania R. Co., 7 Cir., 146 F.2d 673, 676, "That there was such a spot is certain" regardless of just where that spot might be. In the present case the evidence shows that there was a spot where a view of the track and any approaching train was clearly visible. A picture of the track, filed as an exhibit, shows that at a point 25 feet north of the center of the intersection, there was a clear view of the track to the west as far as the curve to the south, and that a train on the track could without doubt be seen as far distant as the overhead bridge to the southwest, more than 500 feet away. Such evidence should have full consideration on a motion for a directed verdict. Backus v. Taplin, 7 Cir., 81 F.2d 444, 447; A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597.

The ruling of the Rohrs case has been approved and followed in several subsequent Ohio cases. Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538; Pennsylvania R. Co. v. Moses, 125 Ohio St. 621, 184 N.E. 8; Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597; Lang, Adm'x v. Pennsylvania R. Co., 59 Ohio App. 345, 18 N.E.2d 271; Grove v. City Ry. Co., 78 Ohio App. 37, 64 N.E.2d 429. The Patton case is the latest ruling of the Supreme Court of Ohio in railroad crossing accident cases, which has been called to our attention. The Court said in that case, in holding that the trial court should have directed a verdict for the defendant,— "Here was a 60 mile-an-hour train rushing toward him not over 240 feet away when he must have been in a place of safety 40 feet from the tracks. At his slow rate of speed he could have stopped his truck almost instantly. He proceeded, nevertheless, upon the tracks and attempted to cross over ahead of the train when it was less than three seconds away.

"We think it cannot be said that such conduct on his part manifested the exercise of due care, or that his conduct was not the proximate cause of his death." [136 Ohio St. 159, 24 N.E.2d 601.]

In applying the rule in Lang, Adm'x v. Pennsylvania R. Co. [59 Ohio App. 345, 18 N.E.2d 274], supra, the Court analyzed it as follows: "The rule that such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby, must necessarily comprehend looking and listening *at the last time and place* where a traveler could stop the conveyance in which he is riding and avoid a collision between the same and a train or trains being operated on such railway track or tracks. The omission so to do, without a reasonable excuse therefor, is negligence and will defeat an action by such person or his administrator for an injury to which such negligence contributes." (Emphasis added.) Since the law of Ohio, as expressed by the Courts of that State, control the decision in this case, the Ohio rule is not superseded or modified by rulings of the U. S. Supreme Court or of our Court involving the application of the Federal Employers Liability Act or in negligence cases decided prior to April 25, 1938. Ellis v. Union Pac. R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. ——; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. This Court has previously followed the Rohrs ruling in a case from Ohio involving facts quite similar to those in the present case, holding that the District Court erred in not directing a verdict for the railroad company at the close of all the evidence. Baltimore & O. R. Co. v. Joseph, 6 Cir., 112 F.2d 518, certiorari denied, 312 U.S. 682; rehearing denied, 312 U.S. 714.

Following the entry of judgment the appellant moved to set aside the verdict and judgment and for judgment in its favor in accordance with its previous motion for a directed verdict, or in the alternative for a new trial, as provided by Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which motion the trial court overruled. In accordance with the views above stated, this motion should have been sustained, the verdict and judgment set aside, and judgment entered for the appellant. The case is remanded to the District Court for action in accordance with the above views.

MARTIN, Circuit Judge (dissenting).

I would affirm the judgment. The majority opinion, as I conceive, correctly states that the record contains substantial evidence that the appellant railroad company was operating its train in a negligent manner, and that this negligence was the proximate cause of the accident.

But it is held that the district judge should have directed a verdict in favor of the appellant on the issue of contributory negligence, primarily upon the authority of the pronouncement in Detroit, T. & I. R. Co. v. Rohrs, 114 Ohio St. 493, 503, 151 N.E. 714, 717, that the appellee was under definite duty to look as well as listen, "and that he must look from a point and at a time that will make the looking effective to apprise him whether danger is near or not." This doctrine, as is stated, was approved and applied in Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 717. In the circumstances of each of these cases, the Supreme Court of Ohio held that the trial court should have directed a verdict for the defendant.

To my thinking, the facts of each of the cited cases present a much stronger showing of contributory negligence on the part of the respective plaintiffs than the evidence reveals upon the part of the plaintiff in the case at bar. Without entering upon a long factual discussion in a dissenting opinion, I desire merely to comment that, in the Patton case, the opinion asserts that under the undisputed facts the plaintiff's decedent, when he reached a point 65 feet south of the tracks, had a clear view of the headlight of the engine for 582 feet east of the crossing and that, when he was at a point 40 feet south of the tracks, he could have seen the headlight at an even greater distance. So, the deduction was drawn that unquestionably he could have seen the headlight of the approaching train, and was chargeable with having seen what could have been seen. In the Rohrs case, the plaintiff had lived for more than three years within about 100 feet of the railroad crossing and, on the clear morning of the accident, had started from that distance driving toward the crossing in low gear at a speed not in excess of 5 or 6 miles per hour; and, after passing a point 20 feet west of the railroad track, had even slowed down from that speed. The locomotive which struck the automobile was backing north toward the crossing at a speed of not more than 8 miles an hour, "and probably not more than half of that at the time of the collision." The Supreme Court of Ohio asserted that "the record shows conclusively that the engine could not have been more than 50 or 75 feet away at any time after the driver of the automobile had passed the point on the highway 20 feet west of the railroad track."

In the case at bar, the train which struck appellee's automobile at the railroad crossing was traveling within city limits at a speed estimated as between 30 and 40 miles per hour. That it was traveling fast is established by the undisputed testimony that the automobile was caught on the front of the engine and was carried in that position about 500 feet before the train was stopped. Moreover, the automobile was destroyed by the collision. Two disinterested witnesses, though very close to the scene of the accident, heard no whistle blow or bell ring. A pile of earth covered by weeds, partly on the railroad right-of-way, obstructed a traveler's view so that, according to several witnesses, a person traveling in an automobile would be required to come within 5 or 10 feet of the railroad track before he could obtain a clear view of the track to the west.

The appellee testified positively that he stopped his car about 8 or 10 feet from the track, looked both ways and listened, and neither saw nor heard an approaching train before he started across the intersection in second gear; and that he was in the middle of the track when he discovered the train 3 feet to the west. Obviously the jury believed his testimony, and the able and experienced trial judge, learned in Ohio law, who saw and heard the witnesses, upheld the verdict.

Upon these facts, I cannot join in the opinion that different minds may not reasonably arrive at different conclusions as to whether or not the plaintiff was guilty of contributory negligence which con-

tributed as a proximate cause to bring about his injury. The issue of contributory negligence was, in my view, plainly a question of fact for the jury, to be submitted under appropriate and correct instructions.

I do not construe the statement in the Rohrs case with respect to making looking "effective" as implying absolutism. If the word "effective" be construed in an absolute sense, every motorist who exercises due care in looking, but fails to see an approaching train, would be barred from recovering in any case where his car was struck at a railroad crossing. Surely such could not have been the intent of the Supreme Court of Ohio, because such an interpretation would fly in the face of its many adjudications to the contrary. A railroad company does not have the exclusive right of way at a street crossing. Texas & P. R. Co. v. Cody, 166 U.S. 606, 17 S.Ct. 703, 41 L.Ed. 1132; 44 Am.Jur., section 493.

In Robinson v. Pennsylvania R. Co., 117 Ohio St. 43, 58, 158 N.E. 83, 88, decided after the Rohrs case, Judge Allen, now of this court, writing then for the Supreme Court of Ohio, in upholding a verdict·for the plaintiff in an action based upon a collision between a railroad train and an automobile at a grade crossing, said: "While an automobile driver rests under the duty of looking and listening before he crosses a railroad track of whose existence he is aware, it is not as a matter of law his absolute and unqualified duty to stop before he goes upon such railroad track unless his looking or listening discloses the presence of a moving train."

Almost in the identical language of the Supreme Court of Ohio in the Rohrs case and in the Robinson case, the trial judge in the instant case incorporated into his charge to the jury the pertinent principles declared in the two cases thus: "It was the duty also of plaintiff, as he was about to cross over the railroad tracks, to exercise his senses of sight and hearing to discover whether a train was approaching the crossing and also about to pass over it and it was his duty to make such observation at such time and place as to be effective for that purpose. On the other hand, while an automobile driver rests under the duty of looking and listening before he crosses a railroad track of whose existence he is aware, as was the plaintiff in this case, it is not as a matter of law his absolute and unqualified duty to stop before he goes upon such track, unless his looking or listening disclosed the presence of a moving train." The district judge charged further: "If you find that defendant has proven by a preponderance of the evidence that plaintiff himself was guilty of negligence directly and proximately contributing to his own injury or injuries in the manner alleged by defendant in its answer then plaintiff cannot recover damages in this case and under such circumstances your verdict should be for the defendant." The court charged also: "If you find that the injuries of which plaintiff complains were brought about as the result of the sole negligence of the defendant, and that such negligence on the part of the defendant was the direct and proximate cause of such injury or injuries without any negligence of the plaintiff having contributed directly or proximately thereto, then in such case, your verdict should be for plaintiff herein and it would be necessary for you to assess or determine the damages." The court had carefully and correctly explained to the jury that proximate cause, in relation to either the plaintiff's negligence or the defendant's negligence, is a cause without which ·the accident would not have happened and which did in the natural course of events and without other efficient and independent cause bring about the injuries of the plaintiff.

In my judgment, the charge was correct, and the court pursued the correct course in submitting to the jury the issue of contributory negligence, instead of pursuing a course of absolutism in taking the case from the jury and deciding that issue of fact against the direct testimony òf the plaintiff. It is my view that· the district judge, well aware of all the Ohio authorities cited in the majority opinion, including the Rohrs and Patton cases, acted in

consonance with these authorities in submitting the issue of contributory negligence to the jury.

In Glasco v. Mendelman, 143 Ohio St. 649, 655, 656, 56 N.E.2d 210, 213, decided July 26, 1944, the Supreme Court of Ohio reversed the holding of the Court of Appeals of that state that, as a matter of law, "the negligence of the plaintiff contributed to the proximate cause, and prevented recovery." The opinion stated: "That court [the Court of Appeals], on appeal on questions of law alone, has authority to determine the question of proximate cause as a matter of law where the evidence is such that reasonable minds can arrive at but one conclusion. However, where the evidence is such that reasonable minds can arrive at different conclusions upon that question then it is one of fact for determination by the jury." The language of Judge Allen in Trentman v. Cox, 118 Ohio St. 247, 160 N.E. 715, 716, quoting from Huddy on Automobiles (8th Ed.) 611, section 576, was quoted: " 'Not only may one cross a street in front of a moving vehicle without his negligence being conclusively established, but it is also held that he need not, as a matter of law, constantly watch the vehicle.' " Moreover, in the Glasco case, the State Supreme Court said: "In Knapp v. Barrett, supra (216 N.Y. 226, 110 N.E. [428], 429), Judge Cardozo said the law does not even say that because a pedestrian 'sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward will be a question for the jury. *If he has used his eyes, and has miscalculated the danger, he may still be free from fault.'* That statement is in line with the weight of authority upon this subject and is the established law of Ohio. See Trentman v. Cox, supra, and Smith v. Zone Cabs, supra [135 Ohio St. 415, 21 N.E.2d 336]. Under the evidence in the instant case reasonable minds might well have arrived at different conclusions upon the question of proximate cause and therefore it was a question of fact for the jury." [Italics supplied.]

Again, on May 9, 1945, the Supreme Court of Ohio reversed the Court of Appeals, in Wilkeson, Adm'r v. Erskine & Son, Inc., 145 Ohio St. 218, 227, 228, 229, 61 N.E.2d 201, 206, in its holding by a divided court that prejudicial error had been committed by the trial court in overruling the defendant's motion for a directed verdict. The opinion of the highest Ohio court declared it to be the settled law of the state that a motion for a directed verdict involves an admission of all the facts which the evidence tends to prove, construing such evidence most strongly in favor of the party against whom the motion is made; that where from the evidence reasonable minds may reach different conclusions upon any question of fact the issue is for the jury; and that "the test is not whether the trial judge would set aside a verdict on the weight of the evidence." The statement last quoted was credited to Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St. 469, 189 N.E. 246. Liberal quotation from 39 Ohio Jurisprudence 799, sections 182 and 183, was made, including assertions that the trial judge, in ruling upon a motion for a directed verdict, should consider the evidence in the light most favorable to the party against whom the motion is made, "of which such evidence is susceptible"; and that the trial judge should indulge in every possible consideration in favor of submission of the case to the jury. The Wilkeson case is cited and quoted with approval in Hilleary v. Bromley, 146 Ohio St. 212, 221, 222, 64 N.E.2d 823, decided January 23, 1946. Compare Childe v. Street R. Co., 80 Ohio App. 128, decided February 17, 1947.

I desire to emphasize the following quotation from the opinion of the Ohio Supreme Court in the Wilkeson case, which expresses a viewpoint to which I have long adhered: "The fact that there was a difference of opinion among the members of the Court of Appeals, all of whom are experienced jurists, suggests at least that reasonable minds can reasonably come to more than one conclusion in respect of the evidence in this case."

I would add that the practical protection of the constitutional guarantee of trial by jury requires forbearance and restraint upon the part of both trial judges and appellate judges in setting aside the findings of juries upon issues of fact, upon the

ground that reasonable minds could not differ upon the questions submitted under correct instructions as to the law. The combined experience, observation and intelligence of jurors—drawn as they are from many activities of life—may better equip them to decide controverted fact issues than would be possible on the part of the most able, intelligent and conscientious judge. At least, the framers of our Constitution thought so in their adoption of the Sixth and Seventh Amendments.

In Tennant, Adm'x v. Peoria & P. U. R. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520, the Supreme Court of the United States, in reversing the Court of Appeals for the Seventh Circuit, which by a two to one vote decided one of the cases cited in the majority opinion [Moss v. Pennsylvania R. Co., 146 F.2d 673] said: "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." [321 U.S. 29, 64 S.Ct. 412.] Moreover, in Lavender, Adm'r v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, the Supreme Court recently made this strong pronouncement: "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

In Highfill v. Louisville & N. R. Co., 6 Cir., 154 F.2d 874, this court applied the doctrine of the two last-cited opinions of the Supreme Court. This doctrine was later applied in Ellis v. Union Pac. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. ——. In Wabash R. Co. v. Walczak, 6 Cir., 49 F. 2d 763, the argument was rejected that mere failure to discover a train by which the automobile in which the plaintiff was riding was struck constituted proof positive that the occupants of the car failed to exercise the duty of continuing care in going upon a grade crossing in a city. Our court long ago recognized that in an action for damages for personal injuries, unless the inference to be drawn from the facts is so plain as to make it a legal conclusion that the plaintiff was guilty of contributory negligence, that issue must be left to the jury. See opinion of Judge Sanford, later a member of the Supreme Court of the United States, in Winters v. Baltimore & O. R. Co., 6 Cir., 177 F. 44. See also Chicago & E. R. Co. v. Ponn, 6 Cir., 191 F. 682, 689, 690, and the cases cited therein; Toledo, St. L. & W. R. Co. v. Howe, 6 Cir., 191 F. 776, 785, and the cases there cited. Compare Carolina, C. & O. R. Co. v. Stroup, 6 Cir., 239 F. 75, 78, 79.

More than 50 years ago, the Supreme Court demonstrated how plain must be the showing that a plaintiff was guilty of contributory negligence before that issue could properly be withdrawn from the jury. Northern Pac. R. Co. v. Egeland, 163 U.S. 93, 16 S.Ct. 975, 41 L.Ed. 82. And, as has been shown, its most recent pronouncements are even stronger.

I have written this dissenting opinion at greater length than I should have desired for the reason that it is my firm conviction that the majority opinion constitutes a departure from the decisions of our court in many adjudicated cases in which the issue of what constitutes contributory negligence as a matter of law was reviewed.